Leon Deutsch, J.
The petition requests the appointment of St. Agatha Home for Children, an authorized agency, as guardian for two destitute children pursuant to section 384 of the Social Services Law, as amended. The mother of the two children is dead and was never married. Their father has never been determined. Both children have been at St. Agatha’s by order of placement of the Bronx Family Court.
At the birth of each child, in 1962 and 1963, the birth certificates for both children contained no information as to *422 the father. No man was ever declared father for either child by a court order of filiation. The mother never identified any man as father.
Subdivision 6 of said section 384 of the Social Services Law provides for "such notice to such persons as the surrogate or judge may in his discretion prescribe.”
Our question is — what type of notice, if any, should be given to the undetermined father? As the father has never been determined, no notice by mail to a last known address is possible. The question, therefore, is whether notice by publication, should be prescribed.
The purpose of notice by publication is twofold. First, to give notice to one who cannot otherwise be served in order that he may have an opportunity to appear and be heard. Second, to satisfy due process requirements, so that the decision of the court be not subject to attack, and the matter subsequently reopened for failure to give due notice.
There is no doubt that those persons given notice by publication are rarely, if ever, informed of that which is intended for them. This is especially true when the published notice is in a publication, such as the New York Law Journal — a newspaper not likely to be read, by undetermined fathers. Indeed, some commentators predict publication by notice will soon disappear. McKinney’s commentator, Joseph M. McLaughlin, says, on page 45 of the 1974-1975 Annual Pocket Part under C316:3 to CPLR 316, in part: "Since service by publication is expensive and in all likelihood will not come to the defendant’s attention anyway, it is entirely possible that such service will one day become a relic.”
The second purpose is the real reason for published notices. That is, to estop the person to whom the notice is given from coming in later and attempting to set aside the judgment. CPLR 317 permits one not personally served to reopen the judgment, under certain circumstances, but in no event more than five years after the entry thereof. Thus, what is sought to be done by the published notice is to satisfy due process requirements, so that five years after entry of judgment, the judgment may not be attacked.
As already noted, notice by publication is at best of dubious value. The Court of Appeals indicated as much in Sellars v Raye (21 NY2d 490). In that case it upheld jurisdiction obtained by notice mailed to the last known address and at the *423 same time by publication once in one newspaper. The court stated (p 506): "Indeed, in affirming Sellars, we give weight to the mailed notice; the single publication in a newspaper added little of value. ” (Emphasis supplied.)
The Sellars case stemmed from an automobile accident case in which the defendant was known and identified, although not locatable. In the instant case, however, the father has never been known, identified or determined — a significant difference.
Rights of unmarried fathers have recently been determined in leading cases. In Stanley v Illinois (405 US 645) the United States Supreme Court gave standing to unmarried fathers. The unmarried father in the Stanley case was, however, known and determined and also he lived with the children for years after their birth.
Earlier this year, the Court of Appeals in Matter of Malpica-Orsini (36 NY2d 568) held, in an adoption proceeding, that the requirement of subdivision 3 of section 111 of the Domestic Relations Law which requires the consent of the natural mother of an out-of-wedlock child, but not the natural father’s consent, is a reasonable classification and does not deny equal protection of the laws, provided the father was accorded due process by giving him notice and a hearing. (Here again we are dealing with a father who is known and who, indeed, was adjudged to be the father.)
The dissent in Matter of Malpica-Orsini insisted that unmarried mothers and fathers had to be treated equally. But even the dissenters in the Orsini case recognized that determining fatherhood presented a threshold matter. Judge Jones stated (pp 588-589): "It would be my understanding that the fact of unmarried fatherhood would have to be established as a threshold prerequisite, presumably by the terms of a proper order of filiation.”
In this case the father never has been present, is unknown, unidentified, and undetermined. The court thus prescribes no notice by publication, nor notice of any kind, and requires no additional attempts to locate the father beyond that made to date.
Accordingly, the petition to appoint the authorized agency as guardian for each of these minor children is approved.