Leon Deutsch, J.
The application, by St. Dominic’s Home, *46 is for an order permitting service of a summons by publication on the natural mother of the child and her legal husband (allegedly not the father of the child), to be published in one newspaper and once only in one given week; a petition having been filed pursuant to section 384 of the Social Services Law, by the aforesaid home, seeking custody and guardianship of the child.
The child was born in February, 1973 and since March, 1973 the child has been in voluntary placement with the agency. The mother of the said child, in September, 1974, signed a voluntary permanent surrender instrument giving custody and the right to place for adoption to the Commissioner of Social Services.
The mother was married in 1967, and her legal husband allegedly deserted her in January, 1970, three years before the child’s birth. The mother believes that her marriage ended in divorce brought by her husband, but has no specific knowledge thereof. She denies that the husband was the father of the child, and told an adoption worker at the home that she did not know who might be the father. The child’s birth certificate is blank as to the father, and lists the mother’s surname for both mother and child.
Since the signing of the surrender instrument, the mother has had no contact with the child or the agency. There never has been any contact, since the birth of the child, by any man who claims or is said to be, the father of the child. The mother has disappeared and the agency is unable to locate, after diligent efforts, the mother or her husband.
Subdivision' 4 of section 384 of the Social Services Law provides for approval of the surrender agreement upon "such notice to such persons as the surrogate or judge [Family Court] may in his discretion prescribe”. It does not, however, otherwise give specific guidelines as to notice.
Our questions, therefore, are — who shall be given notice? What form shall this take? If publication is used, should publication be in one or more newspapers? Should publication be once or more than once?
Notice of the petition should, of course, be given to the mother. If the mother had never been married, notice would not be required for the unknown, unidentified and undetermined father. (See the court’s decision in Matter of Fernando F, 83 Misc 2d 421.)
*47 However, in this case, the mother had been legally married prior to the birth of the child, and her claimed "divorce” is in doubt and unascertainable. The legal husband is, therefore, a proper party and he, too, should be given notice.
The agency has unsuccessfully attempted, after diligent effort to locate the mother and the husband. Neither personal nor substituted service is possible. In such circumstance CPLR 308 (subd 5) could be utilized for the mailing of a summons to them at their last known addresses. Registered letters addressed to the mother and her husband at their last known addresses were returned as undeliverable. As such letters were returned mailed service alone would fail to exhaust all the procedural resources of the law. As the mother and her husband are known parties, albeit unlocatable, all such resources should be exhausted. Another possible form of service authorized and appropriate for the mother and her husband is via publication.
Where personal or substituted service is impossible or impracticable pursuant to CPLR 308 then recourse may be had to CPLR 316 which provides for service by publication in two newspapers once in each of four successive weeks. Such service is very expensive and of dubious value (Sellars v Raye, 21 NY2d 490; Matter of Fernando F, supra.)
There is no particular magic in the number of newspapers used; nor in the number of times process is published. This is especially true where the New York Law Journal is used for publication — a newspaper hardly calculated for general readership. The party noticed is as unlikely to see the notice in one newspaper as in two; and equally as unlikely to see the notice whether published once or more than once. Evidently the Legislature agrees as they have allowed both discretion and power to the court to prescribe notice and to vary the traditional form of publication, in accordance with the several statutes as hereinafter noted.
Generally, where the method of procedure is not prescribed in Family Court matters, the CPLR is applicable "to the extent that they are appropriate to the proceedings involved.” (Family Ct Act, § 165.) As already noted, section 384 of the Social Services Law, the particular statute with which we are here concerned, purports to give discretion to the Judge relative to notice, but is otherwise silent as to specific method to be employed.
However, section 617 of the Family Court Act, offers some *48 assistance. Although the purpose and usage of this statute is different from section 384 of the Social Services Law, both statutes are sufficiently close in spirit and intended result — so as to perceive a valid guideline in section 617 of the Family Court Act appropriate for notice procedure under section 384 of the Social Services Law. Section 617 of the Family Court Act provides that notice by publication, in a termination of parental rights petition, shall be sufficient when placed in one newspaper. The section is silent as to whether such notice shall be published once or more than once.
Section 617 of the Family Court Act provides that publication shall be in accordance with the provisions of SCPA 307. SCPA 307, in turn, authorizes publication” as is provided by CPLR 316 * * * and to such variations of CPLR 316 as the court may provide”.
Moreover, section 661 of the Family Court Act gives the Family Court "like jurisdiction and authority as is now conferred on * * * surrogate’s courts as concerns the guardianship of the person of a minor under the jurisdiction of the court”. (Emphasis supplied.) And of course, the subject statute in the instant case is section 384 of the Social Services Law dealing with the transfer of guardianship of a minor.
I, therefore, hold — with respect to the question of publication in proceedings pursuant to section 384 of the Social Services Law:
(1) a strict application of CPLR 316 (wherein publication is provided in two newspapers once in each of four successive weeks) to a proceeding pursuant to section 384 of the Social Services Law is inappropriate, given the nature of the proceeding, the nature of the social agencies involved, and the large expense incurred by publication.
(2) The court has discretion under section 384 of the Social Services Law and power under section 661 of the Family Court Act to use the procedure prescribed in section 617 of the Family Court Act.
(3) The court in utilizing section 617 of the Family Court Act as a guideline which authorizes one newspaper may, in the court’s discretion, order publication once only.
(4) ?¿Tie court in utilizing section 617 of the Family Court Act as a guideline in the instant matter must look to SCPA 307 and may therefore vary CPLR 316 in such manner as the court may provide.
*49 The court, therefore, grants the application of the petitioner for an order of publication of the summons to be published in one newspaper and to be published once in one given week.
However, it is the further order of this court in the exercise of discretion pursuant to section 384 of the Social Services Law that notice shall also be given by the mailing of the summons by registered mail, return receipt requested, to the last known addresses of the mother and her legal husband. The court has already indicated that registered letters were returned as undeliverable. Nevertheless, the summons itself should be so served pursuant to a formal order of the court, (see CPLR 308, subd 5; SCPA 307, subd 2, par [a]; Social Services Law, § 384; see, also, Sellars v Raye 21 NY2d 490, supra, wherein the court upheld jurisdiction obtained substantially in the same manner as ordered herein, but gave more weight to the mailed notice than to the publication).
Additionally, the court orders that the summons shall be sent by registered mail, return receipt requested, to the mother in care of her mother (the maternal grandmother of the child) at the address of the maternal grandmother. The .court notes that in the affidavit of search submitted by the •petitioner at the court’s direction, there is a statement by a staff member that he was "advised by her [the maternal grandmother] that her daughter did not live with her and that she rarely heard from her” (emphasis supplied). "Rarely” does not mean "never” and for that reason the court also orders a mailing of the summons to the mother at the maternal grandmother’s residence. See Dobkin v Chapman (21 NY2d 490, 505-506 [decided together with Sellars, supra]) wherein the court approvingly observed that "one of the addresses [to which notice was sent] was, apparently, that of the defendants’ parents * * * These are all places at which a defendant, who was properly curious about the legal consequences * * * in which he had been involved * * * might well begin his inquiries for mail or other notice.” (Emphasis supplied.)
Finally, it is the further order of this court that the maternal grandmother herself be added as a party to the action. I make such order pursuant to the authority of section 384 of the Social Services Law "on such notice to such persons as the * * * judge may in his discretion prescribe.”
I do not address myself to the question of whether the grandmother has or does not have standing in her own right. (However, I note parenthetically that Social Services Law, *50 § 371, was amended by L 1975, ch 281, eff June 24, 1975 to permit grandparents to qualify as foster parents.) Rather, I choose to make her a party so as to exhaust every possible safeguard for the benefit of her daughter, the natural mother of the child — a safeguard which the mother probably does not deserve and to which she is probably not entitled. (As was said by the Court of Appeals in Sellars, 21 NY2d 490, 504, supra,” we may not ignore the fact that it was no lack of diligence on the plaintiffs’ part but, rather, the conduct of the defendants themselves, their removal without informing anyone of their whereabouts, which prevented them from receiving more direct service of process”.)
Nevertheless, the maternal grandmother is a resident of New York City and her address is known. The service of a summons upon her by personal service is an easy matter. It is possible that the summons ordered to be mailed to her daughter as aforesaid, the mother of the child, in care of the grandmother’s address may not be accepted by the grandmother. It is possible, too, even if it is, that she may fail or neglect to give it to her daughter, or to tell her about it, even if she should see or hear from her daughter. The grandmother as a party to the action has an opportunity to come forward, if she cares or is able, and to give more precise information as to her daughter’s whereabouts, or to tell of her daughter’s knowledge of the instant proceeding, if any, or as above noted, to take any such action in her own behalf, if she chooses, as may to her seem indicated.
Accordingly, the court orders the petitioner:
1. To add the maternal grandmother as a party to the action and to serve a summons upon her by personal service.
2. To serve the mother of the child and her legal husband by mailing a summons to the last known addresses by registered mail, return receipt requested.
3. To further serve the mother of the child by mailing a summons addressed to her, in care of her mother, (the maternal grandmother of the child) at the address of the maternal grandmother, by registered mail, return receipt requested.
4. To further serve the summons upon the mother of the child and upon her legal husband by publication thereof in one newspaper, to wit, the New York Law Journal published in the County of the Bronx once in one given week. Submit order.