*257 OPINION OF THE COURT
Jack Turret, J.
Petitioner in this custody proceeding is the natural mother of a child born in 1976 in Brooklyn. The respondent is the child’s paternal grandmother, who was appointed by the Surrogate of Kings County as guardian of the person for the child in December, 1977. The child’s putative father, who consented to guardianship by his mother, is not a party to this proceeding. It is conceded that the parents were never married, and that paternity was not adjudicated; nevertheless, the parties agree that the respondent is the paternal grandmother.
The petition alleges that in May, 1977 the father took the child from the petitioner and gave it to his mother, and that "petitioner was afraid to act” because of previous assaults and threats. The petitioner grandmother in the Surrogate’s Court proceeding (respondent herein) alleged the natural mother had abandoned the child, that she was a drug addict, and that her whereabouts were unknown. The father executed a waiver and consent to the appointment of his mother as guardian. No supporting affidavits as to the circumstances of the mother’s alleged abandonment, her addiction, or her disappearance were submitted; nor was an affidavit of diligent search provided. The letters of guardianship were issued on the ex parte application of the respondent herein, without notice to the mother, and apparently without a hearing.
On July 19, 1978 petitioner mother filed a petition for custody of her child in the Family Court. Respondent grandmother moved before me to dismiss the petition on the ground that respondent’s letters of guardianship had not been revoked, and the only proper forum for the adjudication of the custody question is the Surrogate’s Court.
The issue before this court is whether it may assume jurisdiction in a custody proceeding, where guardianship of the person has been awarded in a prior ex parte proceeding in the Surrogate’s Court. The applicable law is to be found in article VI of the New York State Constitution, the Family Court Act, the Surrogate’s Court Procedure Act and pertinent cases.
Unlike the Supreme Court, neither court has general original jurisdiction in law and equity. The powers and jurisdiction of both the Surrogate and the Family Court Judge are limited. (12 Lett-Edmonds-Buttrey-Kaufman, NY Civ Prac, par 3.01 *258 [b].) Section 12 of article VI of the New York Constitution states:
"d. The surrogate’s court shall have jurisdiction over all actions and proceedings relating to the affairs of decedents, probate of wills, administration of estates and actions and proceedings arising thereunder or pertaining thereto, guardianship of the property of minors, and such other actions and proceedings, not within the exclusive jurisdiction of the supreme court, as may be provided by law.
"e. The surrogate’s court shall exercise such equity jurisdiction as may be provided by law.” (Emphasis added.)
The Family Court’s jurisdiction, set out in article VI (§ 13, subd c) of the New York Constitution includes "the following classes of actions and proceedings * * * (2) the custody of minors * * * and (7) as may be provided by law: the guardianship of the person of minors” (emphasis added).
The Family Court Act contains separate sections governing guardianship (Family Ct Act, §§ 661, 662, 663) and custody (Family Ct Act, § 651 et seq.). In guardianship proceedings, this court has "like jurisdiction and authority as is now conferred on county and surrogates courts” (Family Ct Act, § 661). In custody proceedings this court has jurisdiction "with the same powers possessed by the supreme court in addition to its own powers” (Family Ct Act, § 651). The instant proceeding is akin to a habeas corpus proceeding. Subdivision (b) of section 651 of the Family Court Act, as amended in 1978, further broadened the jurisdiction of a Family Court Judge by extending the court’s original jurisdiction to habeas corpus proceedings. This most recent amendment evidences further the Legislature’s intent to vest complete jurisdiction over family affairs in a court where they properly belong because of the auxiliary services available. The Supreme Court in many instances dissolves a marriage and refers issues of custody and support to this court.
SCPA article 17 is the statutory basis for guardianship proceedings in that court, including requirements as to notice (SCPA 1705), form of proceedings (SCPA 1706) and standards governing appointment (SCPA 1707). A guardian of the person may be appointed "[i]f the court be satisfied that the interests of the infant will be promoted” (SCPA 1707, subd 1). The same section states, "The court may appoint a person other than the parent of the infant or the person nominated by the petitioner”, without specifying the grounds on which a parent *259 may be replaced as natural guardian by another, even a stranger. (It is to be noted that absent an adjudication of paternity this respondent grandmother is yet a stranger to this child.)
In contrast to the statutory language of SCPA 1707, the Family Court is bound in its custody proceedings to a higher standard: "the court shall determine solely what is for the best interest of the child, and what will best promote its welfare and happiness” (Domestic Relations Law, §70). It is well settled that a natural parent may be deprived of custody only when statutory grounds (abandonment, neglect, unfitness) or "other like extraordinary circumstances” exist. (Matter of Bennett v Jeffreys, 40 NY2d 543, 544.)
The Surrogate of Kings County was quite correct when he issued letters in this case. SCPA article 17 provides a means for issuance of letters expeditiously which will afford guardianship of the person often necessary on an emergency basis to provide food, shelter, education, and medical care to an infant who might otherwise be abandoned. SCPA article 17 however, was never intended by the Legislature and the Constitution to be the exclusive vehicle for determining custody by reason of the issuance of letters of guardianship ex parte. In most instances, guardianship of the person is issued along with guardianship of the property. Where there is no property possessed by the infant the Surrogate issues guardianship of the person. Here bare facts were asserted in the Surrogate’s Court indicating that the infant was abandoned. When these facts are controverted, as in this case, by a natural mother who comes forward for the first time to seek an adjudication of her rights, she should not be denied the forum of her choosing by the initiation of a proceeding without notice in another court.
This court has before it a petition for custody by a natural mother who has never been adjudged neglectful or unfit. There is no record of any inquiry by the Surrogate as to the mother’s custodial fitness. There is nothing attesting to efforts made to apprise the mother of the guardianship proceeding. Careful inquiry is required when a parent’s rights to custody and guardianship are at stake. (Matter of Jasmine L., 84 Misc 2d 45.)
This court of course may not vacate letters of guardianship issued by the Surrogate. SCPA 701 (subd 3) provides: "No court except the court which issues letters shall have power to *260 suspend, modify or revoke them, so long as the court issuing them has jurisdiction of the estate or matter in which the letters were issued.” (Emphasis added.)
In Matter of Abeles (65 Misc 2d 282, 283), Surrogate Bennett said in a proceeding relating to letters of guardianship: "It would be better procedure if a plaintiff, in an action for separation or divorce, included in his pleadings whether letters of guardianship of the person and property of an infant were issued by a court, and if custody is awarded to one of two coguardians the decree should provide that the court that issued the letters of guardianship be so advised of the award of custody so the court can modify the letters of guardianship as to the person of an infant. (See SCPA 714 and 701, subd. 3.) * * * This court will not in any way interfere with a decree of a competent court or jurisdiction which provided for custody”. Surrogate Bennett recognized that there are situations where his court might issue letters of guardianship and another court would later determine the issue of custody.
The respondent grandmother relies heavily on Stolz v New York Cent. R. R. Co. (7 NY2d 269) wherein the court ruled that the Supreme Court erred in dismissing actions for wrongful death and personal injuries sustained by a decedent, on the ground that the plaintiff, an alleged widow, did not have status because her marriage was void. The Court of Appeals held that the issue was for the Surrogate to determine. In People ex rel. Charboneau v Charboneau (34 AD2d 1034), however, a Supreme Court Justice was held to have erred when he relied on a Surrogate’s guardianship proceeding and failed to exercise his independent discretion over custody. The Appellate Division cited Matter of Lee (220 NY 532, 539) in ruling that a writ of habeas corpus is the proper procedure to decide custody. The instant proceeding is akin to a habeas corpus proceeding, as provided in subdivision (b) of section 651 of the Family Court Act. Custody as in this case and Charboneau, and status as in Stolz v New York Cent. R. R., are completely different issues. The court in this case, having all the interested parties before it for the first time, will exercise the custody jurisdiction afforded it by statute.
Moreover, this court is in a position to completely adjudicate the rights of the parties. A 1978 amendment to the Family Court Act added section 564, providing that in any proceeding before the court where there is an allegation that a person is the father of a child, and it appears that the *261 subject of the proceeding is an out-of-wedlock child, the court may make an order of filiation declaring paternity.
It cannot be argued that the Surrogate’s Court’s facilities for deciding custody disputes are comparable to those available in this court. These specialized services — the Bureau of Mental Health Services psychiatrists, probation investigation and reports, home visits and a children’s waiting room — are the readily available personnel and tools with which this court discharges its duty to resolve family disputes. In contrast, the Surrogate’s Court concerns itself primarily with property questions arising out of the settlement of estates, and has no similar social services readily available to it. As a matter of fact the Probation Department, at the direction of the court made at an earlier hearing, has already investigated the respective abodes of mother and grandmother and has conducted some interviews in depth. As Judge Cardozo reasoned in Matter of Raymond v Davis (248 NY 67), a court of specialized jurisdiction must exercise its power so as to resolve all facts of the dispute rightfully before it. The Surrogate’s Court mandate is to settle the affairs of decedents. As to infants, its power to award guardianship of the person derives historically from its duty to administer property. In contrast, the Family Court concerns itself with the more personal, and often more complex, questions of family relationships. In this case, the child’s property, if any, is not at issue. The appointment of a guardian may have been appropriate at an earlier time when no contest as to custody was apparent, but now that fundamental family relationships are challenged, it is my opinion this court is the best forum in which to decide them.
This court is not arbitrarily asserting jurisdiction after dissatisfied litigants have failed to obtain relief elsewhere. It is simply hearing a case the first time that all concerned parties are before a court of competent jurisdiction. Furthermore, separate awards of custody and guardianship are not necessarily in conflict. "Guardianship of the person does not always, under all conditions, give absolute right to the custody of the person.” (Matter of Lee, supra, p 539.) Should the petitioner be awarded custody, she may be advised to seek revocation of the guardianship grounded on the law of the case with respect to custody established in this court. In any event, as suggested by Surrogate Bennett in Matter of Abeles (supra), this court’s order in the custody proceeding will be brought to the attention of the Surrogate. What Judge Cardozo said in Raymond *262 v Davis (supra, p 72) regarding a claimant to a portion of the decedent’s estate in the Surrogate’s Court applies with equal force to the natural mother’s petition as to her family rights in this court: "To remit the claimant to another forum after all these advances and retreats, these reconnaissances and skirmishes, would be a postponement of justice equivalent to a denial. If anything is due him, he should get it in the forum whose aid he has invoked.”
In the interest of due process, prompt resolution of family disputes, and judicial efficiency, there can be no doubt that this court’s assumption of jurisdiction is warranted. Motion to dismiss is therefore denied. This matter is adjourned to January 3, 1979 for a hearing.