Chief Judge Fuld.
Each of these three cases stems from an automobile accident in New York in which the victim was either injured or killed. In two of the cases, the defendants were residents while, in the third, they had been domiciled in another state. Since the defendants’ whereabouts were unknown, rendering normal prescribed methods of service of process upon them impossible, we are called upon to decide an important question of first impression, namely, whether the methods directed by the respective courts for such service were authorized by paragraph 4 of CPLR 308 and, if they were, whether they .satisfied due process requirements. The Appellate Division, Second Department, upheld the method of service in each case, and the appeal is before us by permission of that court on a certified question.
The facts in the three cases may be briefly stated.
Dobkin v. Chapman
The plaintiff, a New York resident, sues to recover for personal injuries sustained in an accident in Kings County, in which he was struck by an automobile operated by one of the defendants and owned by the other. The car bore a Pennsylvania registration plate. The .owner’s registration certificate, produced at the time of the accident, indicated that he lived *495 at an address in Aliquippa, Pennsylvania; this was also the address given by the owner to the Pennsylvania Bureau of Motor Vehicles. The driver’s operator’s license, also displayed, showed that the driver resided in the same town but at another address.
Numerous letters sent to these addresses by ordinary mail were not answered but were not returned. However, certified and registered mail sent to the same addresses were returned by the Post Office. The Sheriff of the county in which Aliquippa was located was unable to find the defendants to serve them with process sent him for that purpose. In his return, he stated that one of the addresses was that of the defendants’ parents who told him that they had not heard from the defendants in four years. The plaintiff thereupon attempted to effect service pursuant to section 253 of the Vehicle and Traffic Law by serving the Secretary of State and mailing the summons and complaint to the defendants by registered mail. This attempt proved unsuccessful since the envelopes were returned, unopened, with the notation, “ Moved. Left no address ”, and, thus, the required proof of the delivery or refusal of the registered mail was lacking.
On these facts, the Civil Court of the City of New York, Kings County, concluding that the defendants could not be served with process by any of the methods prescribed in paragraphs 1, 2 and 3 of CPLR 308, entered an ex parte order, pursuant to paragraph 4 of that section, permitting service by ordinary mail to the defendants at the Pennsylvania addresses. The Motor Vehicle Accident Indemnification Corporation (MVAIC), acting under article 17-A of the Insurance Law—having previously been notified of the claim and being satisfied, apparently, that the defendants were not insured—moved to vacate the service, presumably under CPLR 3211 (subd. [a], par. 8). The motion was denied and that denial has been affirmed at both the Appellate Term and the Appellate Division, in the latter court by -a 3 to 2 vote.
Sellars v. Raye
An administratrix sues to recover for the wrongful death of her decedent, killed in an accident in Wantagh, Nassau County, while a passenger in an automobile owned and operated *496 by the defendant. At the time of the accident, the defendant lived on Monroe Street in Brooklyn. The policy of insurance which covered his automobile had been cancelled 13 days before the accident.
The administratrix attempted to commence an action through personal service at the Brooklyn address but the defendant could not be found, and all correspondence directed to him at that address was returned. The plaintiff then sought an ex parte order under paragraph 4 of CPLR 308. In granting the application, the Supreme Court, Nassau County, in an order dated May 8, 1964, directed that service ‘ ‘ upon the Secretary of State of the State of New York, in conformity with the provisions of section 254 of the Vehicle and Traffic Law, shall constitute due service ” on the defendant. The plaintiff served the Secretary of State and sent two registered letters to the defendant at the Monroe Street address. Both letters were returned, one with a notation, ‘‘ Unclaimed. Returned to Writer ” and the other with a notation, “Moved. Left no address ”, thus failing to meet the requirements of the Vehicle and Traffic law. The plaintiff thereupon applied for and obtained another ex parte order, also under paragraph 4 of CPLR 308. In that order, dated August 6, 1964—and it is the one with which we are concerned — the court directed that the steps already taken under the earlier order be deemed sufficient service, provided that a copy of the summons and of the order be published once in a designated Brooklyn newspaper. MVAIC, previously notified that the defendant was uninsured and acting on behalf of itself and of the defendant, moved, under CPLR 3211 (subd. [a], par. 8), to set aside the service and dismiss the complaint. The motion was denied and the Appellate Division, dividing as it had in the Dobkin case, affirmed the resulting order.
Keller v. Rappoport
The plaintiff, a New York resident, sues to recover for injuries sustained when his automobile collided with the defendant’s car in Baldwin, Nassau County. At the time, the defendant resided at an address in Long Beach in the same county. He moved from that place without leaving any forwarding address and the plaintiff was unable to serve him with process. *497 Inquiry from persons residing in the neighborhood where the defendant had lived, from his last known employer and from the New York State Motor Vehicle Bureau, proved unavailing. Sometime later, the plaintiff was advised by the defendant’s liability insurance carrier that the defendant had left New York and had moved to a specified address in California.
The plaintiff then attempted service pursuant to sections 253 and 254 of the Vehicle and Traffic Law. However, registered mail sent to the California address was returned with the notation, “ Moved — Left no Address ”. Further attempts to locate the defendant were equally unsuccessful. The plaintiff then applied to the Supreme Court, Nassau County, for an ex parte order under paragraph 4 of CPLR 308. The court determined that service on the defendant under paragraphs 1, 2 and 3 of 308 was impracticable and, acting pursuant to paragraph 4, directed that service be made (1) by mailing a copy of the summons and complaint to the defendant’s last last known address in New York (in Long Beach) and (2) by delivering copies thereof to the insurance carrier.
Following such service, the defendant, by attorneys for the insurance carrier, moved, under CPLR 3211 (subd. [a], par. 8), to vacate the ex parte order directing the manner of service and to dismiss the action. The court at Special Term denied the motion and, noting that the insurance carrier had been able to tell plaintiff’s counsel of the defendant’s removal to California, held that ‘ ‘ the most reasonable means of giving notice to defendant was notice to [such] insurance carrier”. The Appellate Division unanimously affirmed that disposition.[1]
As already indicated, the appellant in each case contends that the mode of service employed was unauthorized by the statute and that, if it was authorized, it violated the requirements of due process. Agreeing with the conclusion reached by the Appellate Division, we find no merit in either of these contentions.
Turning first to the issue of statutory construction, we direct our attention to CPLR 308. Entitled “ Personal service upon a natural person”, 308 provides how such service may be *498 made. In its first three paragraphs, the statute specifies with some precision the manner of effecting such personal service and in paragraph 4 it .recites that, “ if service is impracticable ” under the other paragraphs, then, service ‘ ‘ shall be made * * * in such manner as the court, upon motion without notice, directs ”[2]
It must be assumed, of course, that the Legislature, by enacting paragraph 4 of CPLR 308, meant the court to have only such power and discretion as it could exercise constitutionally. (See American Power Co. v. S.E.C., 329 U. S. 90,108; Matter of Coates, 9 N Y 2d 242; Knapp v. Fasbender, 1 N Y 2d 212, 232; and see, infra, p. 501 et seq.) However, we reject the appellant MVAIC’s contention that, under paragraph 4, the court was confined to doing far less than it might do constitutionally— that, indeed, the court could only provide for “ minor adjustments ” in the procedures established by paragraph 3 of CPLR 308.
Paragraph 4 itself contains no words limiting the court’s discretion except those requiring the court to be satisfied that service is ‘ ‘ impracticable ’ ’ under paragraphs 1, 2 and 3. Those first three paragraphs contain whatever specific prescriptions the draftsmen wished to impose on the service of process. In paragraph 4, however, for use in the unpredictable circumstances in which plaintiff could ¡not follow the prescribed methods, the court was given the discretion to fashion other means adapted to the particular facts of the case before it. *499 If the paragraph is to be meaningful, the court’s discretion under it must be broad. Such a reading is borne out by an examination of the statute’s legislative history.
Section 308 is part of article 3, captioned ‘ ‘ Jurisdiction and Service, Appearance and Choice of Court”. That article evolved from proposed legislation—which did not then contain a counterpart of paragraph 4 of 308 — submitted by the Advisory Committee on Practice and Procedure in 1958. In commenting on the proposed draft, the Committee made it clear that a primary aim of the revision was ‘ ‘ To make it possible, with very limited exceptions, for a litigant in the New York courts to take full advantage of the state’s constitutional power over persons and things.” (Second Preliminary Report of the Advisory Committee on Practice and Procedure, N. Y. Legis. Doc., 1958, No. 13, p. 37.)
Paragraph 4 is one of the important accessory provisions by which the purposes of article 3 are carried out. Not surprisingly, therefore, the report of the legislative committees accompanying the later (1961) draft of a proposed statute which included section 308 (then designated rule 352, subd. [b]), in essentially its present form (Fifth Preliminary Report, N. Y. Legis. Doc., 1961, No. 15, pp. 26-L-265), suggests no limit— beyond the implicit constitutional one — on the means of service a court may properly devise under paragraph 4. Referring to the 1961 draft version of present paragraph 3 — then numbered subparagraph ii of rule 352 (subd. [b], par. 2)—the report declared that it was ‘ ‘ calculated to insure that actual notice is given to the defendant.” However, in sharp contrast, the report says of paragraph 4—then appearing as subparagraph iii of the same rule — that, “ [w]here it would be futile to attempt service by one of the above-mentioned means, then the plaintiff may seek an order for some other method of service under subparagraph (iii).” (Fifth Preliminary Report, N. Y. Legis. Doc., 1961, No. 15, p. 266; see, also, McLaughlin, Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 7B, p. 475.) [3]
*500 It is quite clear that the draftsmen of section 308 deemed it not at all unlikely that the method of service directed under its paragraph 4 would occasionally result in failure to bring actual notice to a defendant. Indeed, the statute contemplates this possibility, providing as it does, in CPLR 317, that, if “ A person served with a summons other than by personal delivery to him or to his agent for service * * * within or without the state ” does not appear, he “may be allowed to defend the action within one year after he obtains knowledge of entry of the judgment, but in no event more than five years after such entry ’ ’. Thus, the language of the statute, its context and its history all combine to sustain our conclusion that the methods of service directed in the present three cases are fully authorized by paragraph 4 of section 308.
We may, at this point, dispose of two other contentions advanced by the defendants on the issue of statutory construction. The appellant in the Keller case urges that service may be made under paragraph 4 of 308 only if it has not been possible to obtain in rem jurisdiction by an attachment and, in Dobkin and Sellars, the appellant MVAIC suggests that sections 253 and 254 of the Vehicle and Traffic Law provide the sole means by which a plaintiff may attempt service sufficient for personal jurisdiction over missing, or out-of-State, defendants in motor vehicle cases. The procedural conditions precedent to the use of paragraph 4 of 308 are to be found only in 308 and there is not the slightest intimation in that section or any other provision as to the necessity for first attempting to obtain in rem jurisdiction. Section 308 and CPLR 313—which has to do with service outside of the State — supplement but are not limited by other statutory provisions for alternate means of service, such as those in the Vehicle and Traffic Law. (See Second Preliminary Report, N. Y. Legis. Doc., 1958, No. 13, pp. 40-41; Fifth Preliminary Report, N. Y. Legis. Doe., 1961, No. 15, p. 272.)
In Dobkin, a further point of statutory interpretation remains before we turn to the constitutional issue affecting all three cases. The defendants in Dobkin, nondomiciliaries, were served outside New York; authorization must thus be found in CPLR 313 which provides that “ [a] person * * * subject to the *501 jurisdiction of the courts of the state under section * * * 302 * * * may be served with the summons without the state, in the same manner as service is made within the state ”.[4] In such a case, the question arises, may an order be made under paragraph 4 of 308 when other methods of service are ineffectual? We hold that it may. Again, we rely, first, upon the plain terms of the statute, CPLR. 313. Its wording is clear and unqualified; service may be made without the State, it recites, “ in the same manner as service is made within the state ”. This, too, is the tenor of the joint report of the Senate and Assembly committees which, in discussing proposed rule 353 — now section 313—noted, in so many words, that service outside of New York under that provision could be effected “ in any manner that is permitted within the state ” and that “ [t]he permissive methods of service without the state have been increased in order to enhance the possibility of acquiring in personam jurisdiction over non-residents subject to our courts’ jurisdiction under such statutes as proposed section 302 ” (Fifth Preliminary Report, N. Y. Legis. Doc., 1961, No. 15, pp. 271-272).
Having thus determined that the statute authorizes the methods of service directed in these cases, we are brought to the issue of constitutionality. The constitutional objection raised by all the appellants is the same, namely, that the methods provided for in the orders fall short of due process standards because they did not give the defendants sufficient chance of receiving actual notice of the commencement of action against them.
Notice and an opportunity to be heard are, of course, high among the traditional elements of fair procedure included in the concept of due process. Their importance is properly emphasized in both decision (see Mullane v. Central Hanover Trust Co., 339 U. S. 306, 314; Walker v. City of Hutchinson, 352 U. S. 112, 118; Milliken v. Meyer, 311 U. S. 457, 463; Matter of *502 Coates, 9 N Y 2d 242, supra)[5] and statute. CPLR 308, for example, provides for a hierarchy of alternative means of service, in which the primary place is given to the delivery of process to the defendant in person. Due process is not, however, a mechanical formula or a rigid set of rules. Increasingly in modern jurisprudence, the term has come to represent a realistic and reasonable evaluation of the respective interests of plaintiffs, defendants and the state under the circumstances of the particular case. (See Mullane v. Central Hanover Trust Co., 339 U. S. 306, 313-315, supra; Fishman v. Sanders, 15 N Y 2d 298; cf. McGee v. International Life Ins. Co., 355 U. S. 220; International Shoe Co. v. Washington, 326 U. S. 310; Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 N Y 2d 443.)
Our law has long been comfortable with many situations in which it was evident, as a practical matter, that parties to whom notice was ostensibly addressed would never in fact receive it. (See, e.g., provisions for service by publication, in certain kinds of actions, in former Civ. Prac. Act, § 232, subds. 1, 2 and in CPLR 315; cf., e.g., Ill. Rev. Stat., ch. 110, § 14.) Plaintiffs, in cases of that kind, have been expected to do what they reasonably could to inform defendants — for example, to mail notice if the address is known (see Schroeder v. City of New York, 371 U. S. 208, 212-213)—but, having done so, the negligible likelihood that the methods remaining to them would actually succeed has not deprived plaintiffs of effective rights of action. (See Walker v. City of Hutchinson, 352 U. S. 112, 114, 115, supra; Standard Oil Co. v. New Jersey, 341 U. S. 428, 432-435; Mullane v. Central Hanover Trust Co., 339 U. S. 306, supra; Comment, 24 U. Chi. L. Rev. 553, 556, n. 21.) Although the Mullane case (339 U. S. 306, supra) involved a situation quite different from that with which we are now concerned, highly pertinent is the court’s statement (p. 317) that “ it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits ” and does not *503 render the service unconstitutional. The same thought was expressed in Walker v. City of Hutchinson (352 U. S. 112, 114, supra). After declaring that “ [t]he right to a hearing is meaningless without notice ”, the court, there, went on to say (p. 115):
“ In Mullane v. Central Hanover Bank & Trust Co., 339 U. S. 306, we gave thorough consideration to the problem of adequate notice under the Due Process Clause. That case establishes the rule that if feasible, notice must be reasonably calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests. We there called attention to the impossibility of setting up a rigid formula as to the kind of notice that must be given; notice required will vary with circumstances and conditions. We recognized that in some cases it might not be reasonably possible to give personal notice, for example, where people are missing or unknown.” (Emphasis supplied.)
Undeniably, there are situations in which insistence on actual notice, or even on the high probability of actual notice, would be both unfair to plaintiffs and harmful to the public interest. (See Mullane v. Central Hanover Trust Co., 339 U. S. 306, 317, 319, supra.)
Of course, as the foregoing discussion demonstrates, what might be inadequate notice in one kind of situation will amount to due process in another. In the cases before us, the plaintiff’s need, the public interest, the reasonableness of the plaintiff’s efforts under all the circumstances to inform the defendant, and the availability of other safeguards for the defendant’s interests are compellingly present. We discuss each of these elements briefly.
The plaintiff’s need is readily apparent. As the Supreme Court has observed, “ The potentialities of damage by a motorist, in a population as mobile as ours ’ ’ are so widespread ‘ ‘ that those whom he injures must have opportunities of redress against him provided only that he is afforded an opportunity to defend himself.” (Olberding v. Illinois Cent. R.R. Co., 346 U. S. 338, 341.) As to the second element—the State’s interest and concern has been evidenced by its policy of ameliorating *504 the difficulties that often beset motor vehicle accident victims in collecting damages for their injuries. Examples of this policy are the requirements for a showing of financial responsibility as a condition to obtaining registration of a motor vehicle (Vehicle and Traffic Law, § 312); the creation of the MVAIC — the appellant in two of the present cases—to provide a source of recovery for victims of uninsured or unknown motorists (Insurance Law, art. 17-A; see infra, p. 505); and the provisions for service of process found in the Vehicle and Traffic Law (§§ 253, 254). And, as to the third element — the reasonableness of the efforts taken by the plaintiffs to inform the defendants — we may not ignore the fact that it was no lack of diligence on the plaintiffs’ part but, rather, the conduct of the defendants themselves, their removal without informing anyone of their whereabouts, which prevented them from receiving more direct service of process. These lawsuits did not appear out of the blue; they are the consequence of serious accidents in which the defendants knew that others had been injured, in one case killed. Anyone who drives a car knows that, after such an occurrence, he is likely to be served as a defendant. He can protect himself against the possibility of failing to receive actual notice by complying with the requirements of his State’s licensing authorities that he keep them informed of his changes of address (e.g., Vehicle and Traffic Law, § 401, subd. 3; § 501, subd. 1, par. g; California Vehicle Code, §§ 4160, 14600; Pennsylvania Code Ann. [Purdon’s], tit. 75, §§ 407,613, subd. [c]); he can keep in touch with his insurance carrier; and he can keep in touch with the victim of the accident until he is reasonably assured that no claim will be asserted against him.
Due process does not require that defendants derive any advantage from the sedulous avoidance of any of these measures. Indeed, in an automobile case, no defendant need be without notice unless he chooses and wants to be; many an injured plaintiff, however, will go without recompense if, in a proper case, the standards of informative notice may not be relaxed.
Relevant also to the due process balance is the presence of the insurer in Keller and of the appellant MVAIC in Dobbin and in Sellars; these, rather than the named defendants, are *505 the real parties in interest in all but form. Even if the insurer in Keller were to deny liability under its policy—we do not know if it will seek to do so or whether it would be so entitled under the circumstances of the case—the plaintiff would have recourse against MVAIC (Insurance Law, §§ 610, 611, 612, 620). We may not forget the declared purposes of the Motor Vehicle Accident Indemnification Corporation (Insurance Law, art. 17-A), designed, as it is, to provide a source of recovery for “ persons who, through no fault of their own, were involved in motor vehicle accidents caused by (1) uninsured motor vehicles registered in a state other than New York * * * (3) motor vehicles registered in this state as to which at the time of the accident there was not in effect a policy of liability insurance [and] * * * (6) insured motor vehicles where the insurer disclaims liability or denies coverage ” (Insurance Law, § 600; see, also, §§ 608, 610, 611, 612 and 620). We may properly take account of the true objectives of these lawsuits —whether they be to recover from a private insurer or from MVAIC—in determining the reasonableness of the notice given to the defendants. Of considerable significance, too, is the fact, already noted (supra, p. 500), that a defendant, not personally served with a summons, who did not appear, may be allowed to defend the action within one year after learning of the entry of judgment (CPLR 317).[6]
It may not, in any event, be said that the kind of notice given under the ex parte orders in these cases was entirely meaningless or that it was not—to cull from Mullane (339 U. S. 306, 314, supra)—“ reasonably calculated, under all the circumstances, to apprise ” the defendants of the actions brought against them. In each case, mail was sent to an address which the defendant himself had given as his last address of record, the address at which, he must have known, he would be sought. In Dobkin, one of the addresses was, apparently, that of the defendants’ parents. In Keller, where the defendant was insured, notice went not only to such last address but to his insurance carrier as well. These are all places at which a defendant, who was properly curious about the legal consequences of the accident in which he had been involved, and not *506 intent on avoiding service, might well begin his inquiries for mail or other notice. The probabilities of actual notice reaching the defendants in the case before us are not less, and are probably greater, than in the many types of cases in which reliance has, traditionally, been placed on publication (see, supra, pp. 502-503). Indeed, in affirming Sellars, we give weight to the mailed notice; the single publication in a newspaper added little of value.
On the question of reasonableness of notice, we have no greater difficulty with Dobbin, where the defendants were nonresidents and service was made outside the State, than we do with the other two cases. Residence itself may provide a foundation for the exercise of personal jurisdiction over an absent defendant by means of substituted service. (See Fishman v. Sanders, 15 N Y 2d 298, 302, supra.) But, beyond this, once we have recognized that the occurrence of an automobile accident in New York justifies the taking of jurisdiction by our courts regardless of the defendant’s domicile (CPLR 301, 302; see Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 N Y 2d 443, supra), the practical considerations affecting the reasonableness of the notice given the defendant are the same on one side of the state line as on the other. In either situation, whether in Dobbin or in Sellars and Keller, the defendant has had the same opportunities for remaining reachable and keeping himself informed, the role of insurers is the same and so, also, are the interests of plaintiff and of the State.
The orders appealed from in all three cases should be affirmed, with costs in Sellars and Keller and without costs in Dobbin —the plaintiff in that case having neither appeared in this court nor filed a brief—and the certified questions answered in the affirmative.
Judges Burke, Scileppi, Bergan, Keating, Breitel and Jasen concur.
In Dobbin v. Chapman: Order affirmed, without costs. Question certified answered in the affirmative.
In Sellars v. Raye: Order affirmed, with costs. Question certified answered in the affirmative.
In Keller v. Rappoport: Order affirmed, with costs. Question certified answered in the affirmative.

. Two justices stated that, although they agreed with the views expressed in the dissenting opinions in Dobkin and Sellars, they considered themselves bound by the decisions in those cases.

. CPLR 308 reads in full as follows:
“Personal service upon a natural person shall be made:
“I. by delivering the summons within the state to the person to be served; or
“2. Except in matrimonial actions by delivering the summons within the state to the agent for service designated under rule 318 of the person to be served; or
“3. Where service under paragraph one cannot be made with due diligence, by mailing the summons to the person to be served at his last known residence and either affixing the summons to the door of his place of business, dwelling house or usual place of abode within the state or delivering the summons within the state to a person of suitable age and discretion at the place of business, dwelling house or usual place of abode of the person to be served and proof of such service shall be filed with the clerk of the court designated in the summons and service is complete ten days thereafter; or
“4. In such manner as the court, upon motion without notice, directs, if service is impracticable under paragraph one, two or three of this section.”

. It has been noted that “ amendments to [the draft of] what is now paragraph 3 of CPLR 308 * * * permitted mailing plus affixing or delivery to a person of suitable age and discretion * * *. The court may, however, by order under paragraph 4 of CPLR 308 permit service merely by mailing.” (1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 314.02.)

. In somewhat greater detail, 313 reads as follows:
“ Service without the state giving personal jurisdiction.
“A person domiciled in the state or subject to the jurisdiction of the courts of the state under section 301 or 302 * * * may be served with the summons without the state, in the same manner as service is made within the state ” by certain categories of persons.

. As the court expressed it in Mullane (339 U. S., at p. 314), “An elementary and fundamental requirement of due process * * * is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.”

. However, the statute provides, the defendant must move for such relief within five years after the entry of judgment.