RICHARD L. LIEBESKIND, Appellant, v MIRIAM S. LIEBES-KIND, Respondent.

First Department, April 20, 1982

APPEARANCES OF COUNSEL

*Peter E. Bronstein* of counsel (*Richard Lee Wallace* with him on the brief; *Bronstein, Van Veen & Bronstein, P. C.,* attorneys), for appellant.

*Burton I. Monasch* of counsel (*Monasch Chazen & Stream,* attorneys), for respondent.

**OPINION OF THE COURT**

Ross, J.

For those attorneys engaged in the practice of matrimonial law, and for those married couples who are contemplating terminating their relationship, or for those who have already commenced or completed this process, the date of July 19, 1980, will hold increased significance. On that date the new matrimonial law, commonly referred to as the "Equitable Distribution Law" (L 1980, ch 281, as amdg Domestic Relations Law, § 236), was declared effective. Indeed, the parties to this action, the Liebeskinds, were affected by the change in law effective as of that date.

This is an action for divorce brought by the plaintiff husband against his wife upon the ground of cruel and inhuman treatment. On Friday, June 27, 1980, the plaintiff informed his wife that he was going to commence this action. The plaintiff indicated that time was of the essence, since he wanted to institute these proceedings prior to the effective date of the Equitable Distribution Law. In addition, the wife was advised to immediately retain an attorney. However, the very next day, the wife fled the jurisdiction, apparently in an attempt to avoid service of process, taking with her the couple's eight-year-old daughter.

The disappearance of the defendant wife and the actions of the plaintiff in attempting to locate her formed the basis for an application to Special Term for leave to serve the absent wife by some means other than "in hand" delivery. (Domestic Relations Law, § 232, subd a; CPLR 308, subds 2, 4.) These actions by the defendant also lie at the center of the controversy now before this court and are determinative of whether service of process pursuant to CPLR 308 (subds 1, 2, 4) was "impracticable" (CPLR 308, subd 5).

Prior to their marital difficulties, the Liebeskinds resided in an apartment in the City of New York and maintained a summer residence in the State of Connecticut. After the wife departed, the plaintiff attempted to contact his brother-in-law who resided in Pennsylvania. This call went unanswered. However, sometime between the date of disappearance of defendant on June 28, and the date of plaintiff's affidavit (July 3) in support of an order permitting substituted service of process, the plaintiff learned that his daughter had recently been enrolled in a summer camp in Pennsylvania. In addition, the plaintiff contacted the wife's place of employment and was informed that she would not be returning until July 21 — after commencement of the new matrimonial law.

Rebuked in his efforts to locate and serve the defendant, the plaintiff turned to the courts for relief. On July 7, the plaintiff submitted an application to Special Term for an ex parte order for leave to serve his wife pursuant to either subdivision 2 (leave and mail) or 4 (nail and mail) of CPLR 308. The court, pursuant to an exercise of discretion, however, entered an order authorizing service pursuant to

CPLR 308 (subd 5) (expedient service). This order, which was entered on July 9, required the plaintiff to deliver a copy of both the summons and the order of the court to a person of suitable age and discretion, other than plaintiff, at defendant's New York City address, or, if this method could not be employed with due diligence, by affixing the same documents to the door of that residence. In addition, plaintiff was required to mail a copy of the summons and order to this address and to the parties' Connecticut residence. Service was completed on July 11 when the defendant's housekeeper was served at the required New York City address and a copy of all papers were mailed to this and the Connecticut address.

Nine days after the new law became effective, the defendant, on July 28, moved to vacate the afore-mentioned ex parte order on the ground that it was improper, invalid and did not confer jurisdiction over the person of the defendant. The wife maintained that her husband had failed to show that any attempts at personal service were initially undertaken before resort was had to substituted service. Special Term agreed with this reasoning and recalled and vacated its prior order. It is from this order that plaintiff appeals. We disagree with this latter determination and now reverse such order and reinstate the former order.

Since the defendant wife could not be located to effect personal service, the plaintiff, accordingly, attempted to obtain permission to utilize a substitute method of service. Indeed, in a matrimonial action before resort may be had to substituted service, a plaintiff must first obtain leave of the court (CPLR 308, subd 2 or 4). In the case before this court, the plaintiff did undertake such a course of action. However, Special Term issued an order pursuant to subdivision 5 of that section which provides that personal service shall be made "in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section" (CPLR 308, subd 5). Obviously, when the Justice presiding at Special Term signed the ex parte order pursuant to this section, he was convinced that the other methods of service were *impracticable*. The meaning of this term in the con-

text of CPLR 308 is not capable of easy definition. Its meaning depends on the facts and circumstances surrounding each case. (*Simens v Sedrish,* 82 AD2d 915.) However, the legislative committee reports disclose that the drafters of this section envisioned a scenario where service under the other sections would be "futile". (*Dobkin v Chapman,* 21 NY2d 490, 499.) Some years ago, then Chief Judge STANLEY H. FULD recognized that this subdivision was "for use in the unpredictable circumstances in which plaintiff could not follow the prescribed methods [and] the court was given the discretion to fashion other means adapted to the particular facts of the case before it" (*Dobkin v Chapman, supra,* at p 498). The facts of this case clearly disclose that the situation in which plaintiff found himself was unpredictable and that service under any other method would have been "futile".

It is important to remember that it was the conduct of the defendant in fleeing which necessitated plaintiff's application. It is reasonable to assume that she used this tactic in order to forestall commencement of the divorce action until after the effective date of the new statute, a fact never denied by defendant or her attorney. The purpose of defendant's action was presumably to assure her a greater share in the property accumulated during the union of these parties. With July 19 fast approaching resort to expedient service was the proper course to pursue. Simply because Special Term did not require the plaintiff to demonstrate that prior attempts at service were undertaken is not error. Subdivision 5 requires no such prior attempts. All that need be shown is that other means of service are impracticable. This the plaintiff did. Nor was the plaintiff required to demonstrate due diligence before resorting to service pursuant to subdivision 5. The only limitation contained in subdivision 5 is the requirement of impracticability of the other forms of service. In our opinion, the standard to determine compliance therewith is somewhat less than the "due diligence" as required by subdivision 4 (*Coyne v Coyne,* 83 AD2d 774; cf. Siegel, New York Practice, § 75, p 81). Support for this conclusion can be found in CPLR 306 (subd [c]) which requires that where

service under subdivision 4 is undertaken, the particulars as to the attempted service under subdivisions 1, 2 or 3 must be detailed. In other words, due diligence must be proven by a showing of specific instances of attempted service. However, no such requirement exists for service under subdivision 5. Here the court in issuing the ex parte order did fulfill all obligations imposed upon it.

In addition, one conclusion is inescapable — the defendant went into hiding to avoid timely service of process. Not only did the defendant flee when informed that her husband was about to commence a divorce proceeding, but it should also be remembered that she reappeared, almost immediately, after the effective date of the "Equitable Distribution Law", and, thereafter, promptly moved to set aside the ex parte order previously obtained by the plaintiff. The United States Supreme Court had long held that "in some cases it might not be reasonably possible to give personal notice, for example where people are missing or unknown" (*Walker v City of Hutchinson,* 352 US 112-116). If this principle is to apply to one who is missing or unknown, then it certainly must apply to one who is purposely avoiding service for the purpose of obtaining an extra pecuniary award.

The Court of Appeals followed the reasoning of the Supreme Court when it stated that "[u]ndeniably, there are situations in which insistence on actual notice, or even on the high probability of actual notice, would be both unfair to plaintiffs and harmful to the public interest" (*Dobkin v Chapman, supra,* at p 503). Certainly, the conduct of defendant falls squarely within the caveat set forth in *Dobkin.* To require one to make personal service upon his wife who has obviously concealed her whereabouts, outside the State of New York, is not only unfair to the plaintiff, but would also be against the public policy of this State. This court should not, and will not, countenance or reward such conduct.

Accordingly, the order of the Supreme Court (CAHN, J.), New York County, entered on March 9, 1981, which recalled, vacated and set aside a prior ex parte order entered on July 9, 1980, permitting service of process pursuant to CPLR 308 (subd 5), should be reversed, on the law and on

the facts, the motion denied and the ex parte order reinstated, without costs.

SANDLER, J. P., SULLIVAN, LUPIANO and SILVERMAN, JJ., concur.

Order, Supreme Court, New York County, entered on March 9, 1981, unanimously reversed, on the law and on the facts, the motion to vacate the ex parte order denied, and the ex parte order reinstated, without costs and without disbursements.