**Jacob PLITMAN, Plaintiff,**

v.

**Joshua LEIBOWITZ a/k/a Joshua Leibovitz; Adi Leibowitz a/k/a Adi Leibovitz; Eyal Leibowitz a/k/a Eyal Leibovitz; Oded Leibowitz a/k/a Oded Leibovitz, Defendants.**

No. 96 Civ. 8883(SS).

United States District Court,
S.D. New York.

Jan. 20, 1998.

Agus & Partners, P.C., Stephen A. Agus, New York City, for Plaintiff.

Mandell Freedman & Mandell, David Aronstam, New York City, for Defendants Joshua Leibowitz, Adi Leibowitz and Eyal Leibowitz.

Lichtenberg & Ginach, P.C., Uri Sella, New York City, for Defendant Oded Leibowitz.

## OPINION AND ORDER

SOTOMAYOR, District Judge.

Defendants Joshua Leibowitz, Adi Leibowitz, Eyal Leibowitz and Oded Leibowitz move for summary judgment, pursuant to Fed. R.Civ.P. 56, on the ground that the plaintiff's claims are barred by the statute of limitations. For the following reasons, the Court grants the defendants' motion.

## BACKGROUND

This action arises from plaintiff's investment of $100,000 into Levtech Medical Technologies Limited ("Levtech"), a company allegedly controlled by defendants. Plaintiff is a citizen of New York. Defendants are citizens of Israel. Defendants Adi Leibowitz and Eyal Leibowitz are Joshua Leibowitz's sons, and defendant Oded Leibowitz is his nephew.

The dates relevant to this motion are as follows: On October 12, 1989, plaintiff invested $100,000 into Levtech, in exchange for 100,000 shares in the company at a dollar a share. Plaintiff alleges that he made the investment based upon defendants' representations that Levtech was about to acquire two Italian companies and that, after Levtech went public, the value of plaintiff's shares

would rise from $1 per share to a projected $13 per share. On April 1, 1990, when the price of Levtech shares had risen to $3.50 per share, plaintiff claims that he demanded the issuance of his stock certificates, so he could sell his 100,000 shares, but that defendants refused to comply. Defendants finally issued plaintiffs' shares on September 15, 1991, at which time plaintiff alleges he discovered that the stock was worthless and that defendants' representations to him about the company were false. Approximately a year and a half later, on April 30, 1993, defendant Joshua Leibowitz issued plaintiff a promissory note in which he promised to repay plaintiff the sum of $100,000. Defendants have not repaid plaintiff to date.

Based upon these allegations, plaintiff initially filed a complaint against defendants in State Supreme Court, on September 3, 1993. However, none of the defendants were served in that action. Plaintiff claims he was unable to serve defendant Joshua Leibowitz because he "effectively evaded service and moved to Israel," and that service as to the other three defendants was unsuccessful because they "were either in Italy or Israel, and did not return to the United States thereafter." (See plaintiff's July 21, 1997 letter to the Court, Exh. C to Aronstam Aff.) Plaintiff filed the complaint in this action (the "Complaint") on November 25, 1996, after locating a correct address for Joshua Leibowitz in Israel.

The Complaint alleges three causes of action against defendants: Counts I and III seek the recovery of $350,000 for fraud in the inducement and unjust enrichment. Count II seeks the recovery of $100,000 based on the promissory note. The Court has already ordered a default judgment on Count II of the Complaint against Joshua Leibowitz. Defendants now seek dismissal of the two remaining counts as barred by the applicable six-year statute of limitations under New York State law. Plaintiff disputes that his claims are time-barred, contending that the statute of limitations was statutorily tolled during defendants' continued absence from New York State during the relevant period.

## DISCUSSION

This Court has diversity jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1332.

■ New York law governs this Court's analysis of whether plaintiff's claims are time-barred. *See Bank of New York v. Amoco Oil Co.*, 35 F.3d 643, 650 (2d Cir.1994) (a federal court sitting in diversity jurisdiction applies the law of the forum state to determine the issues). Under CPLR § 213(8), a fraudulent inducement claim must be brought within six years of "when the party alleging fraud has given consideration and thus suffered damage," *Dynamics Corp. of America v. International Harvester Co.*, 429 F.Supp. 341, 355 (S.D.N.Y.1977), or within two years of the discovery of the fraud, CPLR § 203(g), whichever is longer. Here, plaintiff's fraudulent inducement claim was filed outside of both limitations periods. The claim accrued on October 12, 1989, when plaintiff was induced to invest $100,000 into Levtech, and plaintiff concedes in the Complaint that he discovered the fraud in 1991. Thus, the deadline for bringing action on the claim was in October 1995. (The six year limitations period is the longer of the two in this case because, under § 203(g), plaintiff would have had to bring his claim by September 1993). However, plaintiff filed the Complaint in November 1996.

■ Plaintiff's claim for unjust enrichment is also subject to a six-year limitations period, pursuant to CPLR § 213(2). Under New York law, an unjust enrichment claim accrues upon occurrence of the wrongful act giving rise to the duty of restitution. *See Rosner v. Codata Corp.*, 917 F.Supp. 1009, 1021 (S.D.N.Y.1996). In this case, the six-year statute of limitations arguably began either on October 12, 1989, when plaintiff made the investment, or on April 1, 1990, when defendants allegedly refused to issue plaintiff's stock certificates so he could sell his stock. Under either scenario, however, more than six years passed from the date of accrual before the filing of the Complaint.

Plaintiff does not dispute that his claims were more than six years old as of the date he filed the Complaint. But he argues that

his claims are nevertheless viable because the statute of limitations was tolled by CPLR § 207. Section 207 provides, in part:

If, when a cause of action accrues against a person, he is without the state, the time within which the action must be commenced shall be computed from the time he comes into or returns to the state. If, after a cause of action has accrued against a person, he departs from the state and remains continuously absent therefrom for four months or more, ... the time of his absence ... is not part of the time within which the action must be commenced. This section does not apply:

...

(3) while jurisdiction over the person of the defendant can be obtained without personal delivery of the summons to him within the state.

■ The plaintiff bears the burden of proving that the statute of limitations was tolled by a defendant's absence from the State. See New York State Higher Educ. Servs. Corp. v. Bandler, 168 A.D.2d 752, 753, 564 N.Y.S.2d 211, 212 (3rd Dep't 1990); Douglas v. Christie's Int'l PLC, 226 A.D.2d 185, 185, 640 N.Y.S.2d 530, 530 (1st Dep't 1996) ("it is plaintiff's burden to adduce that jurisdiction could not be obtained through extraterritorial service of process") (citation omitted), Plaintiff contends that § 207 applies here because the defendants left New York State for Israel after the claims accrued and remained absent for four months or more. At a minimum, plaintiff insists that whether § 207 applies raises issues of fact as to defendants' whereabouts during the relevant period, such that discovery must taken before this Court can decide that his claims are time-barred.

■ Defendants, however, argue that any toll of plaintiff's claims under § 207 is expressly excepted by subsection 207(3), which provides that no tolling applies if the plaintiff could have obtained jurisdiction over the defendant by means other than personal service within the State. There is no dispute that defendants in this action were at all times subject to personal jurisdiction in New York by virtue of New York's long-arm statute, CPLR § 302(a), and therefore could

have been properly served in Israel or elsewhere in any of the ways provided for by the CPLR including personal service in Israel, nail and mail, or publication. In that regard, defendants maintain that, during the relevant time period, their Israeli residences were either known to plaintiff or could easily have been ascertained through public records.

Moreover, defendants stress that even if the plaintiff had difficulty locating them for service, plaintiff could have availed himself at any point during the six-year limitations period of CPLR § 308(5), which provides that if service in the usual manner is "impracticable" due to a hard-to-find defendant or for some other reason, then service shall be made "in such manner as the court, upon motion without notice, directs." In effect, § 308(5) nearly always allows a plaintiff to obtain jurisdiction over a defendant by obtaining a court order proscribing the means of service where other attempts at service have been unsuccessful. See Dobkin v. Chapman, 21 N.Y.2d 490, 498, 289 N.Y.S.2d 161, 167, 236 N.E.2d 451, 455 (1968) (declaring that § 308(5) gives courts broad discretion to order means of service "adapted to the facts of the case before it," even if such means might not result in actual notice to the defendant). Here, it is undisputed that plaintiff never sought to serve defendants pursuant to § 308(5). Given plaintiff's failure to do so, defendants argues that, as a matter of law, plaintiff is prohibited from relying on § 207's tolling provision.

Defendants are correct that, under governing New York case law, the tolling provision in § 207 is almost never available to a plaintiff, even to a plaintiff who can show that he unsuccessfully attempted to serve a hard-to-locate defendant out of state. In Yarusso v. Arbotowicz, 41 N.Y.2d 516, 393 N.Y.S.2d 968, 362 N.E.2d 600 (1977), the seminal case on this issue, the New York Court of Appeals made it clear that the exception in § 207(3) prohibits application of § 207's tolling provision whenever an authorized method of service other than instate personal service is available. Thus, the Court held that the statute of limitations was not tolled for the plaintiff in that case, who twice tried to serve the defendant in Florida (as in this case, the

defendant had left New York prior to the filing of the action), but was unsuccessful in the first attempt because the defendant had changed residences in Florida, and was unsuccessful in the second attempt because service was directed to an incorrect address. The *Yarusso* Court stated: "The fact that plaintiff's investigation was not adequate to uncover defendant's correct addresses made mean and methods of out-of-state service no less available to plaintiff for the purposes of § 207(3)." 393 N.Y.S.2d at 970, 362 N.E.2d 600.

In so holding, the Court of Appeals in *Yarusso* underscored that the exception in § 207(3) must be given a broad and literal interpretation, not one that looks to practical considerations. Thus, all that § 207(3) requires is "merely the availability of an authorized method of service by which personal jurisdiction could be obtained." *Id.* Whether the alternative means of service would be effective is not relevant to the inquiry. The standard looks to what is *possible,* not what is *practicable. Id.*

Significantly, the *Yarusso* Court also expressly endorsed the earlier holding of the Appellate Division, Fourth Department, in *Goodemote v. McClain,* 40 A.D.2d 22, 337 N.Y.S.2d 79 (4th Dep't 1972). In *Goodemote,* the Fourth Department ruled that § 207's tolling provision was inapplicable because the plaintiff could have acquired jurisdiction at any time under CPLR § 308(5) by appealing to the court for an order prescribing service. That is precisely the argument defendants make here.

Not surprisingly, the commentary section to § 207 counsels that, after the holdings in *Goodemote* and *Yarusso:*

> there will rarely be a toll [under § 207] for the period of [a defendant's] absence since jurisdiction can often be acquired over the defendant's person simply by applying for an order under CPLR 308(5). The message ... is clear. Henceforth, the practitioner must not assume that merely because the defendant is outside New York the statute of limitations will be tolled. Plaintiff must make every attempt to acquire jurisdiction within the statutory period and this includes what is generally regarded as grasping at the last straw: obtaining an order under CPLR 308(5).

McKinney's Practice Commentaries, CPLR § 207, C207:2, p. 368–69 (1990).

Indeed, in the more than two decades since *Yarusso,* New York state and federal courts have strictly applied the exception in § 207(3), denying the application of § 207's tolling provision in the vast majority of cases. *See Schmidt v. Polish People's Republic,* 742 F.2d 67, 71 (2d Cir.1984) (statute of limitations not tolled by defendant's absence because other means of service of process were available); *Tarrab v. Tarrab,* 239 A.D.2d 263, 657 N.Y.S.2d 674 (1st Dep't 1997) (§ 207 tolling provision did not apply where long arm jurisdiction could have been obtained over defendant); *Mojica v. The Palladium,* 185 A.D.2d 796, 797, 586 N.Y.S.2d 963, 964 (1st Dep't 1992) (no toll where plaintiff failed to show why he could not effect service by another method); *De Simone v. Frosina,* 221 A.D.2d 410, 410, 633 N.Y.S.2d 1012, 1012 (2d Dep't 1995) (tolling provision unavailable "[b]ecause statutory authorization existed for obtaining jurisdiction over the defendant by means other than personal delivery of the summons within this State"); *Immediate v. St. John's Queens Hospital,* 65 A.D.2d 783, 410 N.Y.S.2d 328 (2d Dep't 1978) (§ 207 did not apply where defendant was at all times subject to long-arm jurisdiction, such that alternate bases for service were available); *State of New York Higher Educ. Servs. Corp. v. Langus,* 140 A.D.2d 792, 793, 527 N.Y.S.2d 665, 666 (3d Dep't 1988) (§ 207(3) exception prevents tolling despite fact that plaintiff had difficulty locating defendant's correct address); *Rachlin v. Ortiz,* 133 A.D.2d 76, 76, 518 N.Y.S.2d 421, 421 (2d Dep't 1987) ("the availability of statutory methods of acquiring personal jurisdiction other than by personal delivery within the State makes inapplicable the tolling provisions of CPLR 207"). *See also Weisman v. Rosenker,* 1985 WL 182, at *7 n. 3 (S.D.N.Y.1985) ("New York law is clear that [ § 207's] provisions are applicable only when there is no possible method to obtain personal jurisdiction over the defendant in some manner other than by personal service within the state.").

Even more important to the case at bar, New York appellate courts have consistently followed the *Goodemote* holding, endorsed by the Court of Appeals in *Yarusso*, that a plaintiff who could have moved for an order prescribing service under CPLR § 308(5) but failed to do so, cannot meet his burden of establishing that the limitations period was tolled. *SeeState of New York Higher Educ. Servs. Corp. v. McGarry*, 151 A.D.2d 819, 820, 542 N.Y.S.2d 58, 59 (3d Dep't 1989) (plaintiff who "failed to move an order directing an appropriate manner of service pursuant to CPLR 308(5) . . . cannot rely upon the tolling provisions of CPLR 207"); *New York State Higher Educ. Servs. Corp. v. Bandler*, 168 A.D.2d 752, 753, 564 N.Y.S.2d 211, 212 (3rd Dep't 1990) (action time-barred where plaintiff could have served defendant under § 308(5)); *Rescigno v. Montefiore Hosp. and Medical Center*, 65 A.D.2d 602, 409 N.Y.S.2d 425 (2d Dep't 1978) (same); *Kircher v. Ripton*, 119 Misc.2d 364, 367–68, 462 N.Y.S.2d 803, 806 (Monroe County Sup.Ct.1983) ("[s]ince no attempt was made to utilize CPLR 308(5), plaintiff cannot take advantage of the tolling provisions of CPLR 207").

The only case cited by plaintiff to counteract the weight of this authority is *Liebling v. Liebling*, 146 A.D.2d 673, 537 N.Y.S.2d 46 (2d Dep't 1989). In *Liebling*, the Second Department allowed a two-year toll under § 207 for the period in which the defendant, the plaintiff's husband, had absconded to Costa Rica with the couple's child and lived there secretly, in violation of the court's custody order. *Id.* at 47. The Second Department's holding was cursory; it did not mention whether plaintiff had sought an order under § 308(5), although the existence of the custody order shows that some service upon the defendant was attempted. Nor did the Sec-

ond Department's holding in *Liebling* discuss or cite *Yarusso* or any case law. Furthermore, from this Court's research, it appears that no published opinion has cited to *Liebling* since its holding.

One interpretation of *Liebling* could be that, where a defendant intentionally seeks to evade service, and succeeds in doing so, tolling should be allowed because refusal to toll the statute of limitations in that circumstance would unjustly reward the defendant for his or her unlawful conduct. In that same vein, this Court has found dicta in at least one other case suggesting that a defendant's purposeful evasion of service might be relevant to whether § 207's tolling provision applies. *See Sangdahl v. Litton*, 69 F.R.D. 641, 644 (S.D.N.Y.1976) (in finding § 207 inapplicable, noting that "[t]here is nothing to indicate that defendant resisted or avoided service"). While an exception from § 207(3) in the case of evasion might be compelling from a policy standpoint, such an exception simply has not been carved out or explicitly sanctioned by New York courts. The *Liebling* case is too bereft of analysis to support the creation of such an exception. Moreover, the *Yarusso* and *Goodemote* holdings stand squarely for the proposition that when plaintiffs encounter difficulty in serving defendants, including defendants who are intentionally evading service, they must resort to § 308(5). Indeed, it is likely that plaintiff here could have properly served defendants years ago in the state court action, had he appealed to the state court for assistance under § 308(5). Because plaintiff never tried to do so, this Court follows the clear and impressive weight of New York precedent in holding that plaintiff cannot now rely on § 207's tolling provision.[1] Accordingly,

1. At oral argument, plaintiff argued that an equitable tolling of the statute of limitations should be granted because, even had he proceeded under § 308(5), he would have been unable to collect damages from defendants (i.e. on a default judgment) until he knew where they and their assets actually resided. This argument has no basis either in law or common sense. A default judgment against defendants on his fraud and unjust enrichment claims would have preserved plaintiff's right to collect from them in the future. In any event, plaintiffs' decision not to proceed under § 308(5) was, as plaintiff admit-

ted, a strategic one by him. Unfortunately, he must now live with the consequences of that decision, however misguided. The doctrine of equitable estoppel works to prevent a defendant from asserting the statute of limitations as a defense only where "the plaintiff knew of the existence of a cause of action but the defendant's conduct caused the plaintiff to delay the bringing of a lawsuit." *Buttry v. General Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir.1995). Here, defendants's conduct did nothing to impede or delay plaintiff from bringing, or serving, this action under CPLR § 308(5).

Counts I and III of plaintiff's Complaint are time-barred.

Even were this Court to make an inferential leap to find that *Liebling* created an exception by which, in cases of an evading defendant, plaintiffs could always avail themselves of § 207's tolling provision, no such exception would be warranted in this case. Unlike the plaintiff in *Liebling*, who demonstrated that her husband intentionally avoided service and violated a Court order by absconding to Costa Rico, the plaintiff here has offered nothing beyond the conclusory statement of one Israeli lawyer to support his allegations of defendants' evasion of service. Clearly, plaintiff would like this Court to accept his difficulties in locating the defendants as proof of their evasion, but no such conclusion is warranted, particularly given that plaintiff's attempts to locate the defendants are unimpressive. In the case of Oded Leibowitz, plaintiff's affidavits are devoid of any diligent attempts to locate him for service until 1996, when plaintiff successfully served Oded Leibowitz in this action by mailing service to the exact same address in Israel that appeared on the 1993 summons in plaintiff's state court action. Plaintiff therefore possessed a correct address for Oded Leibowitz at least as early as 1993, and simply failed to serve him within the six-year limitations period. This is hardly a profile of purposeful evasion by the defendant or of a diligent attempt to serve by plaintiff.

Plaintiff's allegations of evasion as to the other defendants in this action are no more persuasive. At best, plaintiff has shown that he made sporadic unsuccessful attempts to locate the defendants over a period of a few years. In that regard, almost all of plaintiff's efforts focused on locating Joshua Leibowitz. No effort was made to locate Oded Leibowitz besides looking in telephone directories, and little more was done to locate Eyal and Adi Leibowitz. The facts of this case are thus far more similar to those of *Yarusso* than *Liebling*, and give this Court no reason to depart from *Yarusso*'s holding.

### CONCLUSION

For the foregoing reasons, this Court holds that plaintiff's fraudulent inducement and unjust enrichment claims are time-barred as a matter of New York law. The Clerk of the Court is directed to enter judgment dismissing Counts I and III of the Complaint against all defendants. A default judgment having been entered against Joshua Leibowitz on Count II (the only named defendant in that Count), the Clerk of the Court should mark this action as closed.

**SO ORDERED.**