GREEN, J.
The Cadle Company (“Cadle”), purchaser and holder of a New York judgment[1] *635 against appellees Barry and Ronnay Jay, appeals a final judgment declaring this foreign judgment to be unenforceable in the State of Florida due to a lack of personal jurisdiction. We conclude that the trial court erred in its determination that this foreign judgment was not entitled to be domesticated and given full faith and credit in Florida. Accordingly, we reverse.
I. NEW YORK LITIGATION
The underlying New York litigation, which resulted in the foreign judgment at issue, arose as a result of a $350,000 commercial note and letter of guaranty executed by the Jays in favor of Connecticut Bank and Trust Company, N.A. (“CBT”). Pure Perfection, Ltd., a New York Corporation owned by the Jays, was also an obligor on the note. Eventually, the Jays defaulted on the note.
The New Connecticut Bank and Trust Company (“NCBT”), as successor in interest to CBT, filed suit on the note and guaranty against the Jays and Pure Perfection. After suit was filed, NCBT went into receivership and the Federal Deposit Insurance Corporation (“FDIC”) was appointed as its receiver. Efforts were made, to no avail, to have the Jays personally served with the complaint and summons.
Following these efforts, FDIC made application for entry of an order directing an alternative manner of service of the summons and complaint pursuant to section 308(5), New York Civil Practice Law and Rules (1991).[2] The court denied this request, without prejudice, observing in pertinent part that,
... while plaintiffs [sic] papers set forth certain efforts to locate defendants neither the telephone company or [sic] the Department of Motor Vehicles have been contacted.
FDIC subsequently renewed its application for alternative service upon the Jays[3] *636 pursuant to section 308(5). In support of this renewed application, FDIC presented its attorney’s affidavit detailing attempts to personally serve the Jays.
In particular, the attorney averred that a local process server had been sent to personally serve the Jays at their New York residence. The server reported that the Jays had moved and sold their home. A copy of the recorded deed to the home was presented to confirm that the home had been sold. The deed also reflected that the Jays had been represented by counsel in the real estate transaction. This counsel, however, had refused to accept service of process on behalf of the Jays or to reveal their whereabouts. Through a subsequent inquiry, the attorney averred that he learned that the Jays were receiving mail at a New York post office box address. Service was attempted on the Jays at that address. Those mailings were not acknowledged by the Jays nor was that process returned by the post office. A postal trace and computer database search tracked the Jays to an Arizona address. However, when a Tucson process server attempted to serve the Jays at this address, it was learned that it was a private post office box inside a “Mail Boxes Etc.” Although the Jays were reportedly receiving mail at that location, the process server was unable to effectuate service upon them.
In response to the court’s prior order that the plaintiff had not contacted the telephone company or the Department of Motor Vehicles in its efforts to locate the Jays, the affidavit asserted that the attorney had, in fact, called directory assistance in both the New York and Arizona areas, but neither had any listing for the Jays. Additionally, the affidavit attached the results of motor vehicle searches conducted in both states. The Arizona search revealed no listing for the Jays, while the New York search showed them still residing at their former residence.
Based upon this affidavit, FDIC requested an order directing alternative service upon the Jays. Specifically, it was requested that the Court authorize service of the summons and complaint by mail to the New York and Arizona post office box addresses where the Jays appeared to have been receiving their mail, as well as by publication in the local New York and Arizona newspapers.
The trial court granted this motion for alternative service of process.[4] Service of process was thereafter effectuated as described above. When there was no timely response, the New York trial court, on July 1, 1992, entered a final default judgment against the Jays.[5]
Thereafter, Cadle purchased this New York judgment. Cadle eventually located the Jays in Florida and on August 5, 2002, recorded the New York judgment in Miami-Dade County pursuant to the Florida Enforcement of Foreign Judgments Act.[6] Notice of the recordation was given to the Jays by the Clerk of Court.
II. FLORIDA LITIGATION
After Cadle commenced domestication and enforcement proceedings in Florida, the Jays moved to quash the notice of recording foreign judgment pursuant to *637 section 55.509(1), Florida Statutes. The trial court conducted a hearing, at which Mr. Jay admitted that he had learned of this foreign judgment as early as 1999, but took no steps to challenge it in New York prior to the commencement of Cadle’s action in Florida. Despite this admission, the court below granted Cadle’s motion to quash based upon its conclusion that under the applicable New York law, the New York court lacked personal jurisdiction to enter a final default judgment against the Jays.
Essentially, the lower court found that, contrary to the representations made to the New York judge, Cadle’s predecessor in interest never contacted the telephone company or Department of Motor Vehicles. Rather, based solely upon representations made by the Jays’ counsel, the trial court found that FDIC’s investigator had consulted with a local police department in New York State and that this police inquiry failed to disclose that Mr. Jay had surrendered his New York driver’s license to authorities in Florida. Had FDIC made inquiry with the New York police department, the trial court concluded that it would have been on notice to inquire into Florida’s motor vehicle registrations to learn of the Jays’ residential address.[7] Accordingly, the trial court quashed Ca-dle’s Notice of Recording of Foreign Judgment on grounds that Cadle’s attorneys had not been diligent enough in its efforts to personally locate the Jays.
Cadle timely took the instant appeal, and argues that because this foreign judgment was facially valid on its record, it was entitled to be given full faith and credit and that the Florida trial court improperly “second guessed” the New York court’s finding as to its jurisdiction under New York law. We agree.
III. LAW
The Full Faith and Credit Clause of the United States Constitution requires that foreign judgments be recognized. See U.S. Const. art. IV, § 1; Nichols v. Nichols, 613 So.2d 137, 139 (Fla. 4th DCA 1993). Such judgments may be collaterally attacked for either lack of jurisdiction or extrinsic fraud. Id. at 139; Hinchee v. Golden Oak Bank, 540 So.2d 262 (Fla. 2d DCA 1989); see also § 55.509(1), Fla. Stat. (2001). However, the jurisdiction of the foreign court to enter the judgment, as well as the validity of the judgment, must be analyzed under the law of the foreign state. See Hinchee, 540 So.2d at 263 (citing Trauger v. A.J. Spagnol Lumber Co., 442 So.2d 182 (Fla.1983)); Milligan v. Wilson, 107 So.2d 773 (Fla. 2d DCA 1958). We therefore must look to New York law to determine whether this judgment is valid.
A New York court has broad discretion to direct alternative means of service, or “expedient service,” but New York law is clear that the moving party must make an affirmative showing that service under the “normally” prescribed methods are impracticable. See Dime Sav. Bank of N.Y., FSB v. Mancini, 169 A.D.2d 964, 564 N.Y.S.2d 859, 859-60 (1991). Under this rule, New York courts have held expedient service invalid where it was based upon conelusory allegations of impracticability. See, e.g., Dime Sav. Bank of N.Y., 564 N.Y.S.2d at 859 (finding expedient service invalid where plaintiffs counsel submitted an affidavit stating that defendant had “ducked” service for some time but sub *638 mitted no affidavit from the process server specifying why service under other means was impracticable or that plaintiff made prior attempts); Markoff v. S. Nassau Community Hosp., 61 N.Y.2d 283, 473 N.Y.S.2d 766, 461 N.E.2d 1253, 1254 n. 2 (1984) (finding plaintiffs conclusory affidavit stating service was impracticable was insufficient to justify expedient service), superseded by statute on other grounds, Maldonado v. Md. Rail Commuter Svc. Admin., 91 N.Y.2d 467, 672 N.Y.S.2d 831, 695 N.E.2d 700, 702 (1998); Simens v. Sedrish, 82 A.D.2d 915, 440 N.Y.S.2d 687 (1981) (vacating expedient service where the only showing made by plaintiff was that the FDIC had had difficulties serving the defendant in the original action, and that she anticipated having difficulties as well); Giordano v. McMurtry, 79 A.D.2d 548, 433 N.Y.S.2d 583 (1980) (finding expedient service unjustified where plaintiff had not attempted any other methods of service).
The fact that a defendant may not actually receive notice of a suit through expedient service has not, under New York law, been found to offend the principles of due process. In the seminal decision of Dobkin v. Chapman, 21 N.Y.2d 490, 289 N.Y.S.2d 161, 236 N.E.2d 451, 501-02 (1968), it was observed that:
Notice and an opportunity to be heard are, of course, high among the traditional elements of fair procedure included in the concept of due process.... Due process is not, however, a mechanical formula or a rigid set of rules. Increasingly in modern jurisprudence, the term has come to represent a realistic and reasonable evaluation of the respective interests of plaintiffs, defendants and the state under the circumstances of the particular case.... Our law has long been comfortable with many situations in which it was evident, as a practical matter, that parties to whom notice was ostensibly addressed would never in fact receive it.... Plaintiffs, in cases of that kind, have been expected to do what they reasonably could to inform defendants — for example, to mail notice if the address is known — but, having done so, the negligible likelihood that the methods remaining to them would actually succeed has not deprived plaintiffs of effective rights of action.
(citations omitted) (footnote omitted). Moreover, in discussing the legislative history of section 308, the Dobkin court pointed out that the draftsmen of this statute actually contemplated that the alternative “expedient” method of service would occasionally result in failure to bring actual notice to a defendant. Id. at 500, 289 N.Y.S.2d 161, 236 N.E.2d 451. As support for this conclusion, the court pointed to another provision of the rule that permits a defendant, against whom a default judgment had been entered, to defend the action within one year after the defendant obtains knowledge of entry of the judgment, but in no event more than five years after such entry. See § 317 C.P.L.R.[8] Thus, the Dobkin court upheld the use of expedient service and found no abuse of discretion in three automobile accident cases where the plaintiff in each case tried unsuccessfully to serve the defendant at his last known address and the defendant had moved after the accident, without leaving a forwarding address. In each case, the plaintiff detailed its efforts to locate *639 the defendant and to effectuate service. Id.
Likewise, we conclude that the record proceedings of the New York litigation fully support the New York court’s factual determination that the prescribed methods of service were impractical and -that expedient service was warranted under New York law. The prescribed methods of service required FDIC to physically locate the Jays or to leave the process at their last known residence or place of business. Based upon the sworn affidavits before it, the New York court acted entirely within its broad discretion to order expedient service under New York law.
Florida law clearly holds that a Florida court should not attempt to determine the validity of a judgment or decree of a sister state or foreign country unless something appears on the face of the record which discloses its invalidity. See Schaffer v. Overby, 613 So.2d 128 (Fla. 3d DCA 1993) (holding Florida trial court bound by full faith and credit and res judicata principles to honor California adjudication that father was natural father of minor child and could not reopen paternity issue by ordering HLA blood tests for father, mother and child); Garland v. Lewis, 547 So.2d 1030, 1031 (Fla. 2d DCA 1989) (“Nothing about the Ohio judgment in the present case, which incidentally contains specific findings on the threshold jurisdictional question, suggestfc] it should not be entitled to full faith and credit.”); Robbins v. Blackstone Valley Nat’l Bank, 379 So.2d 140 (Fla. 3d DCA 1980) (finding that foreign judgment was facially valid and was, therefore, entitled to be domesticated either under the full faith and credit clause or as a matter of comity); Silitronic Chem. Corp. v. R.K.M. Enters., 197 So.2d 33 (Fla. 3d DCA 1967) (affirming trial court ruling that Texas default judgment regular on its face was entitled to full faith and credit in Florida where there were no proceedings in Texas questioning jurisdiction or alleging fraud). Because there was nothing from the face of the New York record to render this foreign judgment invalid for lack of jurisdiction, the judgment was not subject to collateral attack in the proceedings below.[9]
Accordingly, we reverse the final judgment declaring the New York judgment to be unenforceable and quashing the notice of its recordation in the public records and remand with instructions to enter judgment in favor of appellant and permitting enforcement in this state.
Reversed and remanded with instructions.

. Cadle actually holds individual judgments against the Jays, but they have been consolidated for purposes of this appeal.

. This section provides in pertinent part:
Personal service upon a natural person shall be made by any of the following methods:
1. by delivering the summons within the state to the person to be served; or
2. by delivering the summons within the state to the person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential” and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served ...
[[Image here]]
4. where service under paragraphs one and two cannot be made with due diligence, by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served ...
5. in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section.

. A request for the entry of default judgment against the corporate defendant, Pure Perfection, Ltd. was also made at this time.

. The trial court also entered a default judgment against the corporate defendant, Pure Perfection, Ltd. That judgment is not at issue on this appeal.

. In entering this final default judgment, the trial court specifically found, among other things, that the summons and verified complaint had been personally served upon the Jays pursuant to the Court’s earlier order.

. § 55.501, et seq., Fla. Stat. (2001).

. Because Barry Jay complied with applicable New York and Florida law regarding the surrender of his New York driver’s license to Florida authorities after relocating to Florida, the trial court below was convinced that he was not attempting to conceal his whereabouts.

. Specifically, that statute provides in relevant part that, if "a person served with a summons other than by personal delivery to him as to his agent for service ... within or without the state” does not appear, he "may be allowed to defend the action within one year after he obtains knowledge of entry of the judgment, but in no event more than five years after such entry.”

. The issue of whether the New York plaintiff was diligent enough in its efforts to locate the Jays prior to the use of expedient service was properly one for the New York court to resolve upon a timely motion made by the Jays once they learned of the judgment.