OPINION OF THE COURT
Matthew F. Cooper, J.
*955 Considering the pervasive role the Internet plays in today’s world, it is striking how seldom it is used to notify somebody that he or she is being sued. While legal terms like “e-filing,” “e-discovery” and “e-contacts” are becoming increasingly familiar, the concept of “e-service” remains all but unknown. In fact, there appears to be only one reported New York state court decision authorizing service of the summons and complaint by e-mail, and that case, as discussed later in this decision, dealt with a rather unique set of facts.
In this instance, plaintiffs faced a frustrating but not uncommon situation: despite their best efforts they were unable to locate an address where they could make service on two of the defendants. The only address they could find was an e-mail address. As a result, plaintiffs made application to this court to serve process via e-mail. This decision explains why I permitted them to do so. It also discusses the additional conditions imposed to help insure that cyber-notice would be as reliable as the more conventional service of a paper summons and complaint.
Procedural History
In late January 2008, plaintiffs submitted an ex parte application for an order, pursuant to CPLR 308 (5), directing the manner of service. Specifically, plaintiffs sought leave to serve defendants Peter J. Nelson and Corporate Energy Investing, Inc. at the e-mail address EnergyAEI@aol.com. Plaintiffs also requested an extension of time to make service. Plaintiffs had previously applied for the same relief from another judge of this court, who denied the application with leave to renew with a more detailed explanation of the efforts made to locate the defendants’ physical whereabouts. The affirmation of plaintiffs’ attorney, which accompanied the new application, contained a detailed record of the efforts undertaken to find defendants. I subsequently had plaintiffs submit a memorandum of law in support of the application, and then heard oral argument on the matter.
On February 28, 2008 I signed an order authorizing service of the summons and complaint, along with a copy of the order, on defendants Nelson and Corporate Energy by e-mail. The order required that the e-mail be sent on two consecutive dates, that it bear the subject line “LEGAL PAPERS — OPEN ATTACHMENT IMMEDIATELY,” and that additional copies of the summons, the complaint and the order be sent by regular mail to defendants at both their last known New York and Connecticut *956 addresses. The order further required that plaintiffs’ attorney call defendant Nelson’s mobile telephone number to advise him that service was being made on defendants by e-mail and by regular mail to their last known addresses. Finally, the order extended plaintiffs’ time to serve the summons and complaint, nunc pro tunc, to March 28, 2008, and directed defendants to answer the complaint within 30 days of service.
Statement of Facts
Plaintiffs Jason Arthur Snyder and Snyder Energy, LLC are engaged in the business of energy, cogeneration and structuring energy/real property improvement benefits. Defendants Alternate Energy Inc. and Corporate Energy are energy-benefits investment companies. Plaintiffs allege that these companies are related entities in that one is the parent or subsidiary company of the other. Defendant Nelson is the president and owner of both companies.
According to the complaint, on March 23, 2005, Snyder entered into an agreement with Nelson to perform energy, co-generation, and structuring energy/real property improvement benefits services. Approximately one month later, Snyder Energy entered into an agreement with Alternate Energy for the same type of services. Under the terms of the agreements, Alternate Energy agreed to compensate Snyder Energy the sum of 5% of the profits that would be sourced or negotiated through Snyder Energy. Alternate also agreed to reimburse Snyder Energy for certain expenses. Plaintiffs allege that defendants owe them $23,050 for services performed and expenses incurred pursuant to the agreements, and that although duly demanded no payment has been made.
On March 2, 2007 plaintiffs commenced this action by purchasing an index number and filing the summons and complaint. On March 7, 2007 plaintiffs effected service on Alternate Energy by serving the summons and complaint on the New York Secretary of State. Plaintiffs, however, were unable to make service on the remaining two defendants. Corporate Energy was found not to be registered with the Secretary of State, and plaintiffs were unable to find a place where either Corporate Energy or Nelson could be physically served.
As detailed in their attorney’s affirmation, plaintiffs conducted a rigorous search to locate defendants Nelson and Corporate Energy. A few months before the commencement of this action, plaintiffs’ counsel spoke with Nelson on his mobile phone and *957 was able to confirm his cellular number. In connection with a different lawsuit against the same defendants, plaintiffs served a subpoena duces tecum on Cingular Wireless in an effort to obtain subscriber information, including the address and home or business numbers for the defendants. The subpoena was returned to plaintiffs without any information that could be used to effect service on the defendants.
Immediately after commencing this case, plaintiffs attempted to serve Nelson and Corporate Energy at their last known New York address, 11 Skyline Drive, Hawthorne, New York 10532. They found that defendants had vacated the premises and that their telephone number at that address was disconnected. Apparently, defendants chose not to leave any forwarding information.
Plaintiffs also attempted to serve Nelson and Corporate Energy at their last known Connecticut address, 203 Westbrook Road, Essex, Connecticut 06426, by utilizing the services of a Connecticut state marshal. The marshal was unable to locate the defendants. In an affidavit dated May 18, 2007 the marshal states that he “made a diligent search throughout [his] precincts to locate the . . . defendants and found that their office at 203 Westbrook Road, Westbrook, CT was empty” and that he “checked with the local post office but they did not leave a forwarding address.”
In addition to the measures described above, plaintiffs’ counsel tried to find the defendants by performing a search of public records, on-line phone books and other people locators. Counsel also performed a search of court dockets and contacted attorneys on other actions brought against these defendants in an effort to obtain current addresses for them. These efforts, too, proved unsuccessful.
While plaintiffs have searched to no avail for defendants’ physical whereabouts, they have had no problem reaching Nelson on the Internet. On November 1, 2006, plaintiffs’ counsel, utilizing username Zlitigator@aol.com, exchanged messages with Nelson, whose username is EnergyAEI@aol.com, via America Online’s (AOL) Instant Messenger service. This address had been obtained from an earlier e-mail sent by Nelson to plaintiffs. The e-mail, sent from the e-mail address EnergyAEI@aol.com, asked that the recipient “please write back or call me at (917) [XXX-XXXX]” (cellular number redacted by the court) and was closed with the name “Pete Nelson.”
On November 1, 2006, after communicating with defendant Nelson on-line, counsel sent an e-mail to defendant Nelson at *958 EnergyAEI@aol.com, with a request for return receipt attached. Later that evening, counsel received a receipt from AOL indicating that the e-mail had been read.
As recently as January 8, 2008, a matter of days before plaintiffs made the instant application, counsel sent an e-mail to defendant Nelson asking for his current street address. On January 9, 2008, counsel received a receipt from AOL indicating that the e-mail had been read. Counsel did not receive a response to the e-mail.
Finally, counsel attests to the fact that he regularly sees Nelson on line at EnergyAEI@aol.com. He is able to do this because he has added Nelson’s e-mail address to something known as his AOL “Buddy List.” Courtesy of this minor miracle of modern technology, whenever plaintiffs’ counsel is on line he is notified if Nelson is also on line.
Legal Analysis
Fundamental to our system of justice is the right to be heard. “This right to be heard,” however, “has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest.” (Mullene v Central Hanover Bank & Trust Co., 339 US 306, 314 [1950].) Thus, in order to meet the constitutional requirements of due process, service of process must be by a legally approved method that is reasonably calculated to give the defendant notice of the pending lawsuit. (Dobkin v Chapman, 21 NY2d 490 [1968]; Harkness v Doe, 261 AD2d 846 [4th Dept 1999]; City of New York v Chemical Bank, 122 Misc 2d 104 [Sup Ct, NY County 1983].)
In the interests of insuring that constitutionally sufficient notice is given to parties being sued in civil actions, our legislature has established the methods by which the summons is to be served on individuals and corporations. CPLR 308 sets forth the various means that can be employed to make personal service on a natural person. One of the two preferred methods is “in-hand” delivery of the summons to the defendant. (CPLR 308 [1].) The other is leaving the summons with a person of “suitable age and discretion” at the defendant’s “actual place of business, dwelling place or usual place of abode,” and then mailing to either the last known address or actual place of business. (CPLR 308 [2].) If service cannot be made “with due diligence” under either of these two methods, then the party seeking to make service can resort to “nail and mail.” This entails *959 affixing the summons to the door of the defendant’s “actual place of business, dwelling place or usual place of abode,” followed by mailing to the defendant’s last known address or actual place of business. (CPLR 308 [4].)
CPLR 311 (a) (1) provides for personal service on a corporation by “in-hand” delivery of the summons to an authorized corporate representative such as “an officer, director, managing or general agent, or cashier or assistant cashier.”[1] The section also permits service to be made pursuant to the Business Corporation Law. Unlike service on a natural person, service cannot be effected by either leaving the summons with a person of “suitable age and discretion” or by “nail and mail.”
With the realization that it may not always be possible to serve process by one of the prescribed methods, the legislature has given plaintiffs two additional provisions to which they may turn: one for natural persons and one for corporations. As regards natural persons, CPLR 308 (5) allows service to be made “in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section.” As regards corporations, CPLR 311 (b) allows for service, where it is “impracticable” under subdivision (a) (1) of the section, to be “made in such manner ... as the court, upon motion without notice, directs.” Both provisions empower the court to devise an alternative means of serving the summons where the plaintiff has demonstrated that service cannot be made by a statutorily prescribed method. This form of service is often referred to as “alternate service” or “expedient service.”
A plaintiff can demonstrate that service by conventional means is “impracticable” by making diligent, albeit unsuccessful, efforts to obtain information regarding a defendant’s current residence, business address or place of abode. (See Franklin v Winard, 189 AD2d 717 [1st Dept 1993].) In the instant matter, plaintiffs made a strong and detailed showing as to the steps taken to locate defendants Nelson and Corporate Energy. Moreover, they demonstrated actual attempts to serve these defendants at both their last known New York and Connecticut addresses. (See LTD Trading Enters. v Vignatelli, 176 AD2d 571 [1st Dept 1991]; see also Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C308:6.) By so *960 doing, plaintiffs established that service on defendant Nelson under CPLR 308 (1), (2) and (4), and on defendant Corporate Energy under CPLR 311 (a) (1) was impracticable. Accordingly, I determined that they were entitled to a judicially devised form of alternate service.
The next, and more difficult, question presented was whether alternate service could take the form proposed by plaintiffs: services of the summons and complaint on defendants via e-mail. Our Court of Appeals has declared that courts, in devising appropriate forms of alternate service, have wide latitude to “fashion . . . means adapted to the particular facts of the case before [them].” (Dobkin v Chapman, 21 NY2d at 498.) Following this cue, courts have approved a variety of methods. These include service on a defendant’s attorney (Kelly v Lewis, 220 AD2d 485 [2d Dept 1995]); on a defendant’s insurer (Rego v Thom Rock Realty Co., 201 AD2d 270 [1st Dept 1994]); on a defendant’s family member (Sybron Corp. v Wetzel, 61 AD2d 697 [4th Dept 1978]); and by mail alone to a defendant’s last known address and other possible mailing addresses (Arroyo v Arroyo, 76 Misc 2d 652 [Sup Ct, Kings County 1974]). In addition, courts have long resorted to publication of the summons in a newspaper as a means of alternate service. (See e.g. Dobkin v Chapman, 21 NY2d 490 [1968]; Harkness v Doe, 261 AD2d 846 [1999]; Citibank, N.A. v Horoshko, 255 AD2d 544 [2d Dept 1998]; Tremont Fed. Sav. & Loan Assn. v Ndanusa, 144 AD2d 660 [2d Dept 1988]; Gibbs v Baldwin, 52 Misc 2d 268 [Sup Ct, Suffolk County 1966]; London v Parsons, 56 Misc 2d 888 [Nassau Dist Ct 1968].)
While a court considering an application for alternate service generally has an array of case law to guide it, the situation is far different when the application is for service by e-mail. A search of New York state court decisions, both officially reported and published on line, reveals just one decision dealing with the subject of e-mail service.[2] That case is Hollow v Hollow (193 Misc 2d 691 [Sup Ct, Oswego County 2002]), a divorce action with an unusual factual situation.
In Hollow, unlike the matter before me, there was no question as to where the defendant was; he was in Saudi Arabia employed by an American engineering company. The problem, though, was that defendant worked and lived full-time in a high security company compound where armed guards were under *961 orders not to allow a process server access. Thus, unless the plaintiff retained the services of a James Bond or a Chuck Norris to infiltrate the compound, she would be unable to serve the divorce papers on her husband.
After a thorough and thoughtful analysis of the impact that ever-evolving technology has had on our legal system, the Hollow court, citing two federal court cases, Rio Props., Inc. v Rio Intl. Interlink (284 F3d 1007 [9th Cir 2002]) and In re International Telemedia Assoc., Inc. (245 BR 713 [ND Ga 2000]), found there was sufficient reason to allow service by e-mail. In so ruling, the court observed that the defendant had, “in essence, secreted himself behind a steel door, bolted shut, communicating with the plaintiff and his children exclusively through e-mail.” (Hollow v Hollow, 193 Misc 2d at 695-696.)
The instant case involves a far more routine situation. Instead of being secreted like Mr. Hollow behind the steel door of a secure facility in the desert, defendant Nelson is more likely to be living in a suburban split-level and doing business out of his house or in an office park. Just the same, so long as Nelson’s physical whereabouts remain a secret, reaching him and his company by ordinary means remains every bit as difficult as reaching the defendant in Hollow v Hollow. For the plaintiffs here, like the plaintiff in Hollow, the Internet may very well offer the best hope they have of ever being able to reach the defendants Nelson and Corporate Energy.
The problem with the Internet is that it is hard to be absolutely sure that the message is actually received by the person it is intended to reach. Despite the information plaintiffs’ counsel has supplied tying defendant Nelson to e-mail address EnergyAEI@aol.com, there is still the chance, however slight, that the address belongs to someone who for some unknown reason is merely pretending to be Nelson. And even if the address is indeed Nelson’s, then at any given time some other person — say, a friend, family member or coworker — may be the one using the address and thus end up intercepting the message being sent to Nelson.
Concerns about the uncertainty of an e-mailed summons and complaint making its way across the Internet to its intended target is reason to proceed with caution when being asked to authorize e-mail service. But such concerns are not reason enough to summarily reject an application for alternate service simply because the method sought involves e-mail. Strange as it may sound, the validity of a particular form of service is not *962 necessarily dependent on the likelihood of receipt. As the Court of Appeals wrote in Dobkin, “Our law has long been comfortable with many situations in which it was evident, as a practical matter, that parties to whom notice was ostensibly addressed would never in fact receive it.” (Dobkin v Chapman, 21 NY2d at 502.)
A prime example of a type of alternate service that is almost certain not to provide actual notice to a defendant turns out to be one of the most frequently used. This is service by publication. Buried in small type in the back pages of a newspaper, legal notices may very well be some of the least read prose ever composed. It is clearly no secret that the chances of a defendant leafing through the New York Law Journal or the Village Voice and happening upon a summons intended for him or her are remote at best. A recent article in the New York Times highlighted the futility of publication service; the article was pointedly entitled How to Tell Someone She’s Being Sued, Without Really Telling Her (Nov. 19, 2007, at A16).
Unlike publication, service by e-mail at least offers a chance of providing actual notice to a defendant of a pending lawsuit. Of course, the mere fact that a defendant has a computer and an e-mail address is not a basis to allow a plaintiff to resort to e-mail service. In this case, however, plaintiffs have shown that defendant Nelson is regularly on line using an e-mail address that by all indications is his. Under these particular facts, a court could readily conclude that service by e-mail is “reasonably calculated, under all the circumstances, to apprise the defendants of the actions brought against them.” (Dobkin v Chapman, 21 NY2d at 505 [internal quotation marks omitted], quoting Mullane v Central Hanover Bank & Trust Co., 339 US at 314.) Accordingly, I determined that service of the summons and complaint on defendants by e-mail was an appropriate form of service.
The Order
Having found that service by conventional means was impracticable and that the proposed form of alternate service was reasonably calculated to give the defendants notice of the action, I issued an order that authorized the e-mail service that plaintiffs had requested. To better insure the effectiveness of the notice to defendants, the order imposed some additional requirements.
The first of these additional requirements was that the e-mail be sent on two consecutive dates and that it bear a prominent *963 subject line indicating that what was being sent were legal papers in an attachment that was to be opened immediately. This was done to increase the chance that the transmittal would be brought to defendant Nelson’s immediate attention and not inadvertently left unopened, deleted or read by somebody else and forgotten.
Another requirement was that the summons and complaint be mailed to defendants’ last known New York and Connecticut addresses. Although this was probably an exercise in futility, it was nevertheless worth having plaintiffs spend the postage on the offhand chance that defendant Nelson had recently provided the postal service with forwarding information for him and his company.
The last requirement involved the cellular telephone number that plaintiffs had for defendant Nelson. Plaintiffs’ counsel was directed to contact Nelson at that number and inform him that the summons and complaint were being sent by e-mail and regular mail. While it is unusual to advise a defendant in advance of impending service, alternate service is by its very definition a departure from the usual. As with the other requirements imposed by the order, the goal was to improve the odds that defendants would actually be aware they were being sued. Although e-mail would be the primary form of notice, a hybrid approach including mail and phone notice could only serve to heighten that awareness.
The order also extended plaintiffs’ time to complete service on defendants Nelson and Corporate Energy. Although the index number had been purchased and the summons filed as far back as March 2007, plaintiffs, as detailed above, had been continuously engaged in making diligent efforts to locate these defendants or in seeking leave for alternate service. Thus, for “good cause shown,” the extension was granted.
Conclusion
Over the last decade, the world has seen technology advance on a scale and at a speed that staggers the imagination; what is the latest technological innovation one year is outmoded the next. And nowhere have these advances been greater felt than in the area of communications. Ten years ago we communicated largely by telephone, mail or fax. Now it is e-mail that is the preferred method of communication, both locally and globally. Still, despite these unparalleled changes, the old methods for serving process endure as the only methods specifically *964 prescribed by statute. Like many things, the service provisions of the CPLR remain firmly frozen in time.
Fortunately, the “broad constitutional principle” underlying judicially devised alternate service “unshackles the . . . courts from anachronistic methods of service and permits them entry into the technological renaissance.” (Rio Props., Inc. v Rio Intl. Interlink, 284 F3d at 1017, as quoted by Hollow v Hollow, 193 Misc 2d at 695.) In the proper circumstances, such as those presented here, plaintiffs need not wait for the CPLR to be amended in order to be able to resort to service by e-mail. Our state courts already have the power to grant them the relief they seek.

. In this case, delivery of the summons and complaint to defendant Nelson would also constitute service on defendant Corporate Energy by virtue of Nelson being an officer of the corporation.

. There is one federal court case from the Southern District of New York, D.R.I., Inc. v Dennis (2004 WL 1237511, 2004 US Dist LEXIS 22541 [2004]), which in a brief decision authorized e-mail service.