[910 NYS2d 418]

Alfred E. Mann Living Trust, Respondent, v ETIRC Aviation S.A.R.L., Defendant, and Roland ("ROEL") Pieper, Appellant.

First Department, October 19, 2010

## APPEARANCES OF COUNSEL

*Carter Ledyard & Milburn LLP*, New York City (*Jeffrey S. Boxer, Judith A. Lockhart* and *Theodore Y. McDonough* of counsel), for appellant.

*McDermott Will & Emery LLP*, New York City (*B. Ted Howes* and *Audrey Lu* of counsel), for respondent.

## OPINION OF THE COURT

SAXE, J.P.

This appeal concerns the defense of improper service of process relied on by defendant guarantor Roland Pieper; specifically, he challenges the validity of service on him by e-mail while he was a resident of the Netherlands. The motion court rejected Pieper's defense because of the guaranty's provision waiving personal service of process and the provision in the related funding agreement, specifically referenced by the guaranty, authorizing service of notices, demands, requests or other communications by e-mail to Pieper at two specified e-mail addresses. For the reasons that follow, we affirm.

Plaintiff Alfred E. Mann Living Trust and defendant ETIRC Aviation S.A.R.L. entered into a funding agreement pursuant to which each agreed to provide $10 million in funding to a company known as Eclipse Aviation Corp. The parties further agreed that if the Trust provided ETIRC's $10 million share of the funding, ETIRC would be obligated to repay the Trust pursuant to the terms of a $10 million promissory note. The Trust subsequently provided the entire $20 million in financing and, pursuant to the funding agreement, the promissory note was executed by ETIRC, with Pieper signing as ETIRC's Managing Director. As the funding agreement required, Pieper also signed the separate unconditional, irrevocable and absolute personal guaranty covering ETIRC's obligations, which guaranty is the subject of this appeal.

The note and the guaranty each explicitly provided that it was governed by the laws of New York and that any legal action

to enforce it could be brought in New York courts, and expressly waived Pieper's right to service of process of any summons or complaint. Further, section 8 of the guaranty provides that "whenever any notice, demand, request or other communication shall or may be given to *or served upon* any party by any other party . . . each such notice, demand, request or other communication shall be delivered in accordance with the provisions of the Funding Agreement" (emphasis added). Section 8 of the funding agreement provides that such notice or service may be effected by e-mail to Pieper at two specified e-mail addresses.

It is undisputed that ETIRC defaulted on the promissory note and that the Trust served this CPLR 3213 motion on Pieper by e-mailing process to him at the addresses set forth in the funding agreement.

The comprehensive consent to jurisdiction, waiver of personal service, and waiver of any objection to lack of personal jurisdiction contained in the guaranty precludes a viable challenge to the court's jurisdiction over plaintiff's CPLR 3213 motion against Pieper. The provision reads:

"GUARANTOR HEREBY CONSENTS AND AGREES THAT THE STATE OR FEDERAL COURTS LOCATED IN NEW YORK SHALL HAVE EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES BETWEEN GUARANTOR AND LENDER PERTAINING TO THIS GUARANTY OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS GUARANTY; PROVIDED, THAT NOTHING IN THIS AGREEMENT SHALL BE DEEMED OR OPERATE TO PRECLUDE LENDER FROM BRINGING SUIT OR TAKING OTHER LEGAL ACTION IN ANY OTHER JURISDICTION TO COLLECT THE GUARANTY OBLIGATIONS OR TO ENFORCE A JUDGMENT OR OTHER COURT ORDER IN FAVOR OF LENDER. GUARANTOR EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT, AND GUARANTOR HEREBY WAIVES ANY OBJECTION THAT IT MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS. GUAR-

ANTOR HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS, COMPLAINT AND OTHER PROCESS ISSUED IN ANY SUCH ACTION OR SUIT."

Nevertheless, Pieper disputes the propriety of service on him by e-mail, protesting that the guaranty did not authorize service of process by e-mail, and citing *Maddaloni Jewelers, Inc. v Rolex Watch U.S.A., Inc.* (2002 WL 31509881, 2002 US Dist LEXIS 21730 [SD NY, Nov. 6, 2002]) for the proposition that absent clear authorization of service by e-mail, a waiver of personal service is not sufficient to authorize service by e-mail. However, *Maddaloni* is not helpful, because unlike Pieper, the individual in that case who was served by e-mail and ordinary mail had *not* waived his right to formal service of process; rather, the court found, he had merely agreed to accept service on behalf of all the defendants. Pieper, by contrast, expressly waived, in writing, any right to formal service of process in an action under his guaranty.

Pieper cannot dispute that parties to a contract are free to contractually waive service of process (*see e.g. Comprehensive Merchandising Catalogs, Inc. v Madison Sales Corp.*, 521 F2d 1210, 1212 [7th Cir 1975]; *National Equip. Rental v DecWood Corp.*, 51 Misc 2d 999 [App Term 1966]; *see generally* 86 NY Jur 2d, Process and Papers § 7). By definition, such waivers render inapplicable the statutes that normally direct and limit the acceptable means of serving process on a defendant. Indeed, a stipulation waiving service confers jurisdiction, precluding the defendant from successfully challenging the court's jurisdiction over him: "Jurisdiction over the person of the defendant may be acquired by his consent" (*Gilbert v Burnstine*, 255 NY 348, 355 [1931] [internal quotation marks and citation omitted]), and jurisdiction is conferred by a stipulation waiving service (*id.*).

Yet Pieper suggests, albeit without support, that the dictates of the Hague Convention as to service of process in the international context (Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 UST 361, TIAS No. 6638 [1965]) may not similarly be avoided by a written waiver.

Although the Convention, including its service requirements, must be treated as the law of the land (*see Morgenthau v Avion Resources Ltd.*, 11 NY3d 383, 390 [2008], citing US Const, art VI, cl 2; *see also Volkswagenwerk Aktiengesellschaft v Schlunk*,

486 US 694 [1988]), we see no reason why the requirements of the Convention may not be waived by contract. Notably, in none of the cases Pieper relies on did the foreign defendants agree to waive service (*see Volkswagenwerk*, 486 US 694; *Morgenthau*, 11 NY3d 383; *Sardanis v Sumitomo Corp.*, 279 AD2d 225 [2001]; *Reynolds v Woosup Koh*, 109 AD2d 97 [1985]). We observe that precluding a contractual waiver of the service provisions of the Hague Convention would allow people to unilaterally negate their clear and unambiguous written waivers of service by the simple expedient of leaving the country.

We conclude that Pieper's waiver of personal service freed plaintiff from the requirements of law that would otherwise dictate the manner in which to serve Pieper with process—both under CPLR 308 and, given his presence in the Netherlands, under the Hague Convention.

Of course, while Pieper's waiver of personal service and consent to jurisdiction prevents him from successfully interposing a jurisdictional defense, absent a waiver of his due process right to notice and an opportunity to be heard, he would still be entitled to notice of plaintiff's CPLR 3213 motion (*see Fiore v Oakwood Plaza Shopping Ctr.*, 78 NY2d 572, 581 [1991], *cert denied* 506 US 823 [1992]). Therefore, if there had been no contractual provision directing the manner in which plaintiff was to communicate with Pieper in the event that "notice[s], demand[s], request[s] or other communication[s]" were to be "given to *or served upon* any party by any other party" (emphasis added), Pieper's challenge to service on him by e-mail might have warranted further court proceedings to ensure that his due process rights were protected. But the guaranty specifically provided that such notices "shall be delivered in accordance with the provisions of the Funding Agreement," and the funding agreement, in turn, specified that such notices were to be sent to Pieper by e-mail at two specified e-mail addresses. The motion court therefore correctly concluded that the parties' contracts authorized and justified service by e-mail on Pieper.

We observe that while service of process by e-mail is not directly authorized by either the CPLR or the Hague Convention, it is not prohibited under either state or federal law, or the Hague Convention, given appropriate circumstances. Indeed, both New York courts and federal courts have, upon application by plaintiffs, authorized e-mail service of process as an appropriate alternative method when the statutory methods have proven ineffective (*see e.g. Snyder v Alternate Energy Inc.*, 19 Misc 3d

954 [2008] [permission to serve process by e-mail granted under CPLR 308 (5)]; *Popular Enters., LLC v Webcom Media Group, Inc.*, 225 FRD 560 [ED Tenn 2004] [granting permission under Fed Rules Civ Pro rule 4 (f) (3) to serve process by e-mail]). Service by e-mail on foreign defendants covered by the Hague Convention has also been approved upon a proper showing (*see e.g. MPS IP Servs. Corp. v Modis Communications, Inc.*, 2006 US Dist LEXIS 34473 [MD Fla 2006]). Therefore, there is nothing necessarily improper about the use of e-mail service.

We reject Pieper's implicit contention that e-mail does not provide sufficient notice because an e-mail from a party with whom the recipient has not previously corresponded is likely to be flagged as "spam." Notably, federal courts have considered whether court-ordered service of process by e-mail and fax comports with due process requirements and have concluded that it is proper as long as there has been a showing that those methods are "reasonably calculated to apprise defendants of the pendency of this action" (*see Philip Morris USA Inc. v Veles Ltd.*, 2007 WL 725412, *3, 2007 US Dist LEXIS 19780, *9 [SD NY, Mar. 12, 2007]; *Rio Props., Inc. v Rio Intl. Interlink*, 284 F3d 1007, 1017 [9th Cir 2002]). While there are cases in which service by e-mail has been held improper in the absence of a showing that the defendant would likely receive the transmitted information (*see Ehrenfeld v Bin Mafouz*, 2005 WL 696769, *3, 2005 US Dist LEXIS 4741, *8-9 [SD NY, Mar. 23, 2005]; *Pfizer Inc. v Domains by Proxy*, 2004 WL 1576703, *1, 2004 US Dist LEXIS 13030, *3-4 [D Conn, July 13, 2004]), the present matter is not such a case. The funding agreement specifically provides Pieper's e-mail address as the means to provide him with any notice, request, demand, or communication. Consequently, service of process at that address is, by definition, "reasonably calculated" to apprise Pieper of the action and thus comports with the requirements of due process.

Finally, we reject Pieper's contention that the motion court should have afforded him additional time to respond to the merits of the Trust's claims. Where an action is commenced by a motion for summary judgment in lieu of complaint (CPLR 3213), the defendant is obligated to set forth in his opposition papers any defenses he may have on the merits and to lay bare his evidentiary proof supporting any such defenses (*see Thompson v Olsen*, 177 AD2d 449 [1991]; *Bennell Hanover Assoc. v Neilson*, 215 AD2d 710 [1995]). "There is no automatic CPLR 3211 (f)-type extension for a dismissal motion made

against a CPLR 3213 motion" (*Thompson v Olsen* at 450, citing Siegel, 1986 Supp Practice Commentary, McKinney's Cons Laws of NY, Book 7B, CPLR C3213:15, 1991 Supp Pamph, at 572-573). Pieper was simply not entitled to additional time to respond to the merits of plaintiff's motion, and he made no showing of a particular reason why he should be awarded additional time in the court's discretion.

Accordingly, the judgment of the Supreme Court, New York County (Eileen Bransten, J.), entered June 29, 2009, awarding plaintiff, as against defendant Pieper, the amount of $10,206,027.39 plus interest in the amount of $2,796.17 per diem from February 28, 2009 through the date of final payment, should be affirmed, without costs. The appeal from the order, same court and Justice, entered June 24, 2009, which denied Pieper's cross motion to dismiss plaintiff's motion for summary judgment in lieu of complaint on the ground of improper service of process and granted plaintiff's motion should be dismissed, without costs, as subsumed in the appeal from the judgment.

FRIEDMAN, MOSKOWITZ, FREEDMAN and ROMÁN, JJ., concur.

Judgment, Supreme Court, New York County, entered June 29, 2009, affirmed, without costs. Appeal from order, same court, entered June 24, 2009, dismissed, without costs, as subsumed in the appeal from the judgment.